RIPPLE, Circuit Judge.
 

 In this appeal, we are asked to review the judgment of the district court which reversed the bankruptcy court’s grant of an involuntary petition in bankruptcy. The district court held that Mrs. Busick’s contention that she was not liable to the petitioning creditors for certain debts incurred by her husband in business constituted a “bona fide dispute” over the debt which, under the terms of 11 U.S.C. §§ 303(b)(1) and (h)(1) precluded the granting of an involuntary petition in bankruptcy. For the following reasons, we affirm the judgment of the district court.
 

 I
 

 Background
 

 A.
 
 Procedural History
 

 On February 14, 1980, the appellants filed a joint petition for involuntary relief against Mrs. Busick and her husband. After rather extended proceedings which are not directly relevant here and which are summarized in an earlier appeal to this court,
 
 Matter of Busick,
 
 719 F.2d 922 (7th Cir.1983), the matter was tried before the bankruptcy court and judgment was entered on April 5, 1985. The bankruptcy court held that Mrs. Busick was indebted to the creditors and granted the involuntary petition. Mrs. Busick’s motion to alter or amend the judgment was denied on March 11, 1986.
 

 B.
 
 Statutory Scheme
 

 The statutory provision under which the creditors have proceeded is 11 U.S.C. § 303, which governs involuntary petitions in bankruptcy. While this suit was pending, the statute was amended by the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98-353, 98 Stat. 392 (1984) (1984 amendments) which was passed on July 10, 1984.
 

 The 1984 amendments to 11 U.S.C. § 303 imposed additional limitations upon the granting of an involuntary petition. First, in subsection (b), Congress added a requirement that, in order to have standing, the claim of each creditor must be one that is not subject to “a bona fide dispute.” Under subsection (h), a claim which is the subject of “a bona fide dispute” must be eliminated from any calculation of whether the debtor generally was not paying his debts as they came due.
 

 C.
 
 Orders of the Bankruptcy Court
 

 1. Order of April 5, 1985
 

 In an order dated April 5,1985, the bankruptcy court granted the creditors’ involuntary petition.
 
 See Matter of Busick,
 
 No.
 
 *747
 
 80-10502, order at 15-16 (Bankr.N.D.Ind. Apr. 5, 1985). In finding that the record contained “sufficient evidence to support findings of express and implied agency, joint venture, and ratification,”
 
 id.
 
 at 21, the bankruptcy court stated: “[I]t follows that Jane Busick’s denial of affiliation with her husband in business transactions was not made in good faith. As a consequence, the Court now holds that she has not raised a good faith dispute with respect to the claims of petitioners herein.”
 
 Id.
 
 at 22. Because the bankruptcy court found that Mrs. Busick’s claims were not made in good faith, it held that they were not the subject of a bona fide dispute. Thus, apparently applying the 1984 amendments to 11 U.S.C. § 303, the court found that the petitioners had standing to file an involuntary petition under section 303(b) and that Mrs. Busick was generally not paying her debts as they became due as required by section 303(h).
 

 2. Order of March 11, 1986
 

 On March 11, 1986, the bankruptcy court issued an order amending part of the April 5, 1985 order.
 
 Matter of Busick,
 
 No. 80-10502, order at 3-4 (Bankr.N.D.Ind. Mar. 11, 1985). Again, the court found that “Ms. Busick was integrally involved in her husband’s business affairs.” However, in this order, the bankruptcy court stated that the 1984 amendments to section 303 did not apply to the petition filed against Mrs. Bu-sick. Furthermore, the court stated that, had those amendments been applicable, relief would be denied to the petitioners because Mrs. Busick’s “dispute of these debts appears bona fide.”
 
 Id.
 
 at 2. Thus, while substantially revising its rationale, the court declined to alter its original judgment and permitted the involuntary petition.
 

 D.
 
 Order of the District Court
 

 Mrs. Busick appealed the judgment of the bankruptcy court to the district court. In reversing the bankruptcy court’s order, the district court first held that the 1984 amendments to section 303 applied to the petition.
 
 Matter of Busick,
 
 65 B.R. 630, 635 (N.D.Ind.1986). Next, the court discussed several cases which sought to apply the bona fide dispute requirement of subsections (b) and (h) of section 303. After examining
 
 In re Lough,
 
 57 B.R. 993, 996-97 (E.D.Mich.1986),
 
 In re Stroop,
 
 51 B.R. 210, 212 (D.Colo.1985), and
 
 In re Johnston Hawks, Ltd.,
 
 49 B.R. 823, 831 (D.Haw.1985), the district court chose the standard used by the court in
 
 In re Lough.
 
 Thus, the court held that, “ ‘if there is either a genuine issue of material fact that bears upon the debtor’s liability, or a meritorious contention as to the application of law to undisputed facts, then the petition must be dismissed.’ ”
 
 Busick,
 
 65 B.R. at 637 (quoting
 
 In re Lough,
 
 57 B.R. at 997). Moreover, the court stated that “a bona fide dispute as that term is used in §§ 303(b) and 303(h) refers to a genuine issue of material fact that bears upon the debtor’s liability, or a meritorious contention as to the application of law to undisputed facts.”
 
 Id.
 
 The court held that, in this case, the facts were not disputed and “certainly not enough to warrant a finding that the bankruptcy court’s findings were clearly erroneous.”
 
 Id.
 
 Instead, the court indicated that the issue here turned upon “the identification of the proper legal standard and the application of the facts to it.”
 
 Id.
 
 Because Mrs. Busick had raised “substantial questions” to the claims involved, the district court, applying the
 
 Lough
 
 standard, concluded that the claims were the subject of a bona fide dispute.
 
 Id.
 
 at 638. Finally, the district court noted that, although there was ample evidence of a lack of good faith on the part of Mrs. Busick and her husband, the term “bona fide” in the statute referred only to the dispute, and “not the moral character of those involved in it.”
 
 Id.
 
 Therefore, the district court reversed the bankruptcy court’s granting of the involuntary petition.
 
 Id.
 

 II
 

 Analysis
 

 A.
 
 Applicability of the 1984 Amendments
 

 The first question facing this court is whether the 1984 amendments to section 303 apply to the facts of this case. With
 
 *748
 
 respect to this question, we agree with the district court that the reasoning used by the court in
 
 In re Stroop,
 
 47 B.R. 986 (D.Colo.1985), is persuasive. In
 
 Stroop,
 
 the court stated:
 

 The 1984 Act was enacted on July 10, 1984. Section 553 of the Act sets forth the effective dates of the various provisions of the so-called substantive amendments contained in Title III of the Act. The amendments were made effective to cases filed 90 days after the date of enactment, with two exceptions. The amendments made by section 426(b) of the Act to 11 U.S.C. § 303 were made effective upon the date of enactment, and the collective bargaining amendments made by Subtitle J of the Act were made effective upon the date of enactment, but were made applicable only to cases filed on or after the date of enactment. Therefore, the Act sets forth three different effective date provisions for various sections of the substantive amendments contained in Title III of the Act.
 

 In determining whether a statutory amendment is to be applied to pending cases, the first inquiry is into the legislative intent in enacting the amendment. It is significant to note what is not contained in section 553 of the Act. The general provisions and the collective bargaining provisions are specifically made effective only to cases filed after their respective effective dates. The effective date provision for the section 303 amendments does not contain such a restriction. Had Congress intended for the amendments to section 303 to apply only to cases filed after their effective date, it seems reasonable to assume that Congress would have expressly stated so, as it did with the other amendments. Since Congress did not, the conclusion that remains is that Congress intended for the amendments to section 303 to apply to all cases pending as of the effective date, July 10, 1984.
 

 Id.
 
 at 987-88. The bankruptcy judge in
 
 Stroop
 
 also cited one commentator’s explanation for the Congressional decision to make this part of the 1984 amendments effective immediately:
 

 As noted in the Special Report to Bankruptcy Law Reports dealing with the 1984 Act, Special Report — Bankruptcy Amendments and Federal Judgeship Act, Bank L.Rep. (CCH, July 16, 1984) 111203(b):
 

 The amendments made by section 426(b) are to become effective upon the date of enactment of this Act. This accelerated effectiveness is designed to relieve in cases where no final order has been issued a perceived inequality in the law whereby creditors could file for involuntary bankruptcy relief even where the debtor’s reason for not paying his debt is a bona fide dispute over his liability for the debt.
 

 Stroop,
 
 47 B.R. at 988.
 

 We also note, as did the court in
 
 Stroop,
 
 that application of the 1984 amendments to pending cases is compatible with the requirements of
 
 Bradley v. School Bd. of Richmond,
 
 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974). In
 
 Bradley,
 
 the Supreme Court stated, “a court is to apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary.”
 
 Id.
 
 at 711, 94 S.Ct. at 2016. In
 
 Bradley,
 
 the Supreme Court set forth three factors which courts should consider in making a determination of whether a manifest injustice will result from the application of a legislative enactment to cases pending prior to the enactment of that legislation. These factors included: 1) the nature and identity of the parties; 2) the nature of the rights affected; and 3) the impact of the change in law on pre-existing rights.
 
 Id.
 
 at 717, 94 S.Ct. at 2019. The court in
 
 Stroop
 
 also analyzed this problem. As in
 
 Stroop,
 
 here we have what is more accurately described as a “routine private” dispute as opposed to one involving significant public concern.
 
 Stroop,
 
 47 B.R. at 988. Moreover, as that court noted, “[t]he power of placing an alleged debtor in involuntary bankruptcy is more a procedural remedy than a substantive right.”
 
 Id.
 
 at 989. As the court in
 
 Stroop
 
 continued:
 

 
 *749
 
 The relief sought by creditors under section 303 is entry of an order for relief placing the alleged debtors in involuntary bankruptcy. 11 U.S.C. § 303(h). If any rights vest in the creditors at all in a section 303 proceeding, they vest upon the entry of the order for relief. Courts have held that a debtor has no vested right to a discharge in bankruptcy at the time of filing its petition.... The right accrues at the time the judge rules on the discharge, and any amendments to the dischargeability provisions in the interim are applied by the judge, absent manifest injustice to the parties.
 

 Id.
 
 (citations omitted).
 

 The final factor in the
 
 Bradley
 
 analysis is the effect, if any, the amendments may have on pre-existing rights. Although under prior Seventh Circuit precedent, a creditor whose claim was the subject of a bona fide dispute could be a petitioning creditor under section 303, application of the amended section 303 would not work a manifest injustice because creditors have a number of other methods of protecting their interests:
 

 [ Creditors whose claims are subject to a bona fide dispute still have the right to pursue those claims in state court proceedings. Should they prevail there, they can then petition under section 303. Thus, the creditor retains all non-bankruptcy rights it has ever had to collect the disputed debts from the debtors, and its ability to place the debtor in bankruptcy is merely postponed until the dispute is resolved, rather than lost forever.
 
 See Kuehner v. Irving Trust Co.,
 
 299 U.S. 445, 57 S.Ct. 298, 81 L.Ed. 340 (1936). Therefore, there is no injury to any pre-existing right that would render the application of the amendments to section 303 to pending cases manifestly unjust.
 

 Stroop,
 
 47 B.R. at 989.
 

 B.
 
 The Appropriate Standard
 

 The statute does not define the term “bona fide dispute.” We must therefore adopt an analysis which appropriately fulfills the Congressional intent. Like the district court, we have surveyed the various formulations which have been employed by the bankruptcy courts in deciding cases under the 1984 amendments.
 
 [1]
 
 We agree with the district court that the standard employed by the court in
 
 Lough
 
 is the formulation most compatible with the Congressional intent.
 
 [2]
 
 Under that stan
 
 *750
 
 dard, “if there is a bona fide dispute as to either the law or the facts, then the creditor does not qualify and the petition must be dismissed.”
 
 Lough,
 
 57 B.R. at 997;
 
 see In re Garland Coal & Mining Co.,
 
 67 B.R. 514 (W.D.Ark.1986) (adopting the
 
 Lough
 
 standard). Under this standard, the bankruptcy court must determine whether there is an objective basis for either a factual or a legal dispute as to the validity of debt. However, “[t]he statute does not require the court to determine the outcome of any dispute, only its presence or absence. Only a limited analysis of the claims at issue is necessary.”
 
 Busick,
 
 65 B.R. at 637.
 

 As noted by the district court, Mrs. Busick raised
 

 substantial legal questions regarding each of the creditors’ claims. These claims arose almost exclusively through the actions of Jane’s husband, Leo. Any liability for these debts flowing to Jane cannot be characterized as a foregone conclusion. Indeed, the creditors base their claims on theories of agency, quantum meruit, and joint venture. While their presentation of these theories in their arguments before the court presents a plausible case, Jane has raised substantial questions as to all of them.
 

 Id.
 
 at 637-38.
 

 Mrs. Busick has therefore raised claims which, when assessed by an objective standard, raise a reasonable contention “as to the application of law to undisputed facts.”
 
 Lough,
 
 57 B.R. at 997. Therefore, the claims upon which the involuntary petition is based are the “subject of a bona fide dispute” as that term is used in subsections (b) and (h) of section 303.
 

 Conclusion
 

 Because the district court correctly identified the legal standard and correctly assessed the facts of the case in light of that standard, we affirm its judgment.
 

 Affirmed.
 

 [1]
 

 .The district court focused on three cases that discussed the appropriate definition of the term “bona fide.”
 

 In
 
 In re Stroop,
 
 51 B.R. 210 (D.CoIo.1985), the court adopted a summary judgment standard, stating: "If the defense of the alleged debtor to the claim of the petitioning creditor raises material issues of fact or law so that a summary judgment could not be rendered as a matter of law in favor of the creditor on a trial of the claim, the claim is subject to a bona fide dispute."
 
 Id.
 
 at 212.
 

 In
 
 In re Johnston Hawks, Ltd.,
 
 49 B.R. 823 (D.Haw.1985), the court stated that, in considering whether a claim was subject to a bona fide dispute, the court should consider:
 

 1. The nature of the dispute.
 

 2. The nature and the extent of the evidence and allegations presented in support of the creditor's claim and in support of the debtor’s contrary claims.
 

 3. Whether the creditor's claim and the debt- or’s contrary claims are made in good faith and without fraud or deceit.
 

 4. Whether on balance the interests of the creditor outweighs [sic] those of the debtor.
 

 Id.
 
 at 831.
 

 Finally, the district court discussed
 
 In re Lough, 57
 
 B.R. 993 (E.D.Mich.1986). The court in
 
 Lough
 
 criticized the
 
 Stroop
 
 standard because “its approach did not account for the possibility of undisputed facts but substantial dispute as to the proper application of law.”
 
 Matter of Busick,
 
 65 B.R. 630, 637 (N.D.Ind.1986). The
 
 Lough
 
 court also criticized the
 
 Johnston Hawks’
 
 standard for two reasons. First, it found no basis in the statute for balancing the interests of the creditor with those of the debtor. Second, the court in
 
 Lough
 
 noted that the good faith, fraud, or deceit factor of
 
 Johnston Hawks’
 
 analysis would allow a claim with no objective basis to defeat an involuntary petition. As noted by the court, if the debtor held a good faith, but subjective, belief that his challenge to the creditor’s claim was meritorious, the debtor could defeat the petition.
 

 [2]
 

 . In
 
 Lough,
 
 the court noted that in
 
 In re Henry,
 
 52 B.R. 8 (S.D.Ohio 1985), the court had relied upon the following statement of the proponent of the amendment:
 

 The problem can be explained simply. Some courts have interpreted section 303’s language on a debtor’s general failure to pay debts as allowing the filing of involuntary petitions and the granting of involuntary relief even when the debtor’s reason for not paying is a
 
 *750
 
 legitimate and good-faith dispute over his or her liability. This interpretation allows creditors to use the Bankruptcy Code as a club against debtors who have bona fide questions about their liability, but who would rather pay up than suffer the stigma of involuntary bankruptcy proceedings.
 

 My amendment would correct this problem. Under my amendment, the original filing of an involuntary petition could not be based on debts that are the subject of a good-faith dispute between the debtor and his or her creditors. In the same vein, the granting of an order of relief could not be premised solely on the failure of a debtor to pay debts that were legitimately contested as to liability or amount.
 

 I believe this amendment, although a simple one, is necessary to protect the rights of debtors and to prevent misuse of the bankruptcy system as a tool of coercion. I also believe it corrects a judicial misinterpretation of existing law and congressional intent as to the proper basis for granting involuntary relief. 30 Cong.Rec. S7618 (June 19, 1984) (comments of Senator Baucus).
 

 Lough,
 
 57 B.R. at 996 (quoting
 
 Henry,
 
 52 B.R. at 9-10).