FERGUSON, Circuit Judge:
This is a case in which an ousted business partner has attempted to force an involuntary bankruptcy in order to gain a business advantage. It calls for this Court to determine the test to be used in determining whether a dispute is “bona fide” for the purposes of filing an involuntary bankruptcy petition under 11 U.S.C. § 303. We adopt the objective test used by the other, circuits and affirm the Bankruptcy Appellate Panel’s well-reasoned dismissal of the petition.
I.
In 1990, Ray Scott and Wes Higgins signed an agreement to form Vortex Fishing Systems (“Vortex”), a company that manufactures blinking and beeping fishing lures. At the time, Scott agreed to provide capital as a minority shareholder while Higgins ran the business from Kalis-pell, Montana. In 1994, Scott still had not seen a profit and became more involved in the business. In what appears to have been a fairly acrimonious series of events, he flew into Kalispell, got an accountant, and became the majority shareholder in the summer of 1994. Today, Higgins maintains his fifty-five shares in the company. Scott’s investment is now 7,945 shares.
By all accounts, Scott took over a company in serious debt, both to the IRS and to various creditors. Some of these debts were to current business contacts, while others were to now-defunct companies that had originally developed the technology and equipment to make Vortex’s lures. The pertinent debts are described in some detail below.
Vortex stayed in business and began to make progress on repaying its debts. In the late 1990’s, Scott moved the company to Arizona. Around the same time, he was approached by Rodger Ford, a businessman interested in purchasing Vortex for his two sons. Although Scott and Ford failed to reach an agreement on terms for selling the company, Ford and Higgins subsequently met privately with each other to discuss Ford’s continuing interest in Vortex.
Higgins and Ford began then exploring the possibility of filing an involuntary bankruptcy petition. Because Vortex had more than 12 creditors, at least three creditors with claims not subject to a bona fide dispute had to join the involuntary petition. 11 U.S.C. § 303(b). In 1998 and 1999, Higgins was assigned the claims of two of Vortex’s putative creditors; he also has a claim as an agent in one of Vortex’s predecessors, Vortex Lures Partnership (“VLP”). At the same time, Higgins and Ford contacted other creditors of Vortex to see who would be interested in joining a petition for involuntary bankruptcy.
The initial petition for involuntary bankruptcy, filed on January 25, 1999, included four petitioning creditors: Byron-Lambert, Liberty Tool & Manufacturing, Inc. (“Liberty Tool”), Vortex Lures Ltd (“VLP”), and Viking Lures Manufacturing, Inc. (“Viking”). On February 4, 1999, Byron-Lambert filed a motion to withdraw as a petitioning creditor, citing a misunderstanding of the nature of the procedure as *989 its reason for withdrawing. The Bankruptcy Court granted this motion on February 24, 1999. On March 22, 1999, Bert and Leora Vincent, Higgins’ in-laws, filed a motion to join the involuntary petition, which the Court granted. On March 24, 1999, the Bankruptcy Court conducted a hearing on the involuntary petition. On April 30, 1999 and May 3, 1999, respectively, two additional creditors, Telenational Marketing and Witchcraft Tape Products filed motions to join the involuntary petition.
On May 5, 1999, the Bankruptcy Court dismissed the involuntary petition without ruling on the recent motions to join or Vortex’s opposition to these motions. The Bankruptcy Court found that the claims of Liberty Tool, VLP, Viking, and the Vin-cents were all subject to legal or factual dispute and that they were not bona fide creditors as required by 11 U.S.C. § 303(b)(1). It also found that Vortex was generally paying its debts as they came due.
On appeal, the Bankruptcy Appellate Panel (“BAP”) affirmed the Bankruptcy Court’s dismissal of the involuntary petition. The BAP held that Byron-Lambert’s claim had been properly dismissed and that the Bankruptcy Court had not clearly erred in determining that the claims of Liberty Tool, Vortex Lures, Viking, and the Vincents were subject to bona fide disputes. Regarding the latter petitions to join, the BAP ruled that Witchcraft Tape Products was a proper petitioning creditor, but held that any error regarding the Bankruptcy Court’s failure to consider Telenational Marketing’s motion for joinder was harmless because on May 6, 1999 Telenational filed a declaration stating that “Telenational Marketing has not joined in any petition for involuntary bankruptcy against Vortex Fishing Systems, Inc.” (Emphasis in original).
The BAP also held that Bankruptcy Rule § 1003(b) did not require the Bankruptcy Court to give notice to Vortex’s other creditors and upheld the court’s determination that Vortex was generally paying its debts as they came due.
This timely appeal followed.[1]
II.
Because appeals from the BAP are subject to de novo review, this Court independently reviews the Bankruptcy Court’s decision. In re Mitchell, 209 F.3d 1111, 1115 (9th Cir.2000). We review conclusions of law de novo and conclusions of fact for clear error. In re Chang, 163 F.3d 1138, 1140 (9th Cir.1998). A bankruptcy court’s exercise of discretion over a creditor’s voluntary withdrawal of claims is reviewed for abuse of discretion. In re Lowenschuss, 67 F.3d 1394, 1399 (9th Cir.1995).
We have not previously had occasion to decide the appropriate standard of review for determinations of whether there is a “bona fide dispute” for the purposes of 11 U.S.C. § 303. We agree with the other circuits that have held that this is essentially a factual inquiry and adopt a clearly erroneous standard of review. See In re Sims, 994 F.2d 210, 221 (5th Cir.1993); In re Rimell, 946 F.2d 1363, 1365 (8th Cir.1991). A bankruptcy court is not asked to *990 evaluate the potential outcome of a dispute, but merely to determine whether there are facts that give rise to a legitimate disagreement over whether money is owed, or, in certain cases, how much.
III.
A.
Before we can review the substance of the Bankruptcy Court’s decision, we must consider the standard that Court used to find that there was an insufficient number of petitioning creditors. Section 303 requires that creditors filing a petition for involuntary bankruptcy against a debtor have claims that are not subject to a bona fide dispute. 11 U.S.C. § 303(b)(1). Where there are twelve or more creditors, as here, three or more creditors without a bona fide dispute must file a petition, and the claims must aggregate at least $10,775. Id.; 11 U.S.C. § 104.
We have previously held that the burden is on the petitioning creditors to show that no bona fide dispute exists. In re Rubin, 769 F.2d 611, 615 (9th Cir.1985). This Circuit has not defined a “bona fide dispute,” however, nor is it defined by statute. In the instant appeal, the BAP adopted a test set out by the Seventh Circuit that requires the bankruptcy court to “determine whether there is an objective basis for either a factual or a legal dispute as to the validity of the debt.” In re Busick, 831 F.2d 745, 750 (7th Cir.1987).
Neither party contests this definition, and all other circuit courts that have considered the question have adopted some variation of Busick’s “objective test,” first set out in In re Lough, 57 B.R. 993, 996-97 (E.D.Mich.1986) (“[I]f there is either a genuine issue of material fact that bears upon the debtor’s liability, or a meritorious contention as to the application of law to undisputed facts, then the petition must be dismissed.”). See B.D.W. Assoc. v. Busy Beaver Bldg. Ctrs., Inc., 865 F.2d 65, 66-67 (3d Cir.1989); Sims, 994 F.2d at 221 (5th Cir.); Rimell, 946 F.2d at 1365 (8th Cir.); Bartmann v. Maverick Tube Corp., 853 F.2d 1540, 1544 (10th Cir.1988). See also In re Eastown Auto Co., 215 B.R. 960, 965 (6th Cir.BAP 1998).
The alternative interpretation, adopted by some bankruptcy courts but largely discarded now, would be to apply a subjective standard and ask whether the claims were made in good faith. See In re Johnston Hawks, Ltd., 49 B.R. 823 (Bankr.D.Haw.1985). Neither party advocates for this standard, and we see no reason to complicate our analysis with a subjective inquiry. As we have previously noted of the debate, “[t]he ambiguity demonstrates why we should not use Latin where English will do.” In re Seko Investment, Inc., 156 F.3d 1005, 1007, n. 1 (9th Cir.1998). We join our sister circuits in adopting the objective test for disputes regarding liability or amount.[2]
We now turn to the claims of the Petitioning Creditors.
1. Byron-Lambert
Byron-Lambert was the only initial petitioning creditor whose claim Vortex did not dispute. A week after the involuntary petition was filed, Byron-Lambert wrote to Higgins’ attorney, and asked to withdraw its name as a petitioning creditor. Its manager wrote, “We find that the facts are not exactly as represented in your letter and we therefore ask that our name be removed from this action.” The Bankruptcy Court granted this motion, and Byron-Lambert took no part in any of the *991 depositions or briefings in this case. Appellants did not challenge Byron-Lambert’s motion to withdraw.
Appellants contend that the Court erred in allowing Byron-Lambert’s withdrawal and/or not counting its claim to determine the sufficiency of the involuntary petition because its withdrawal arguably caused the petition to fail for lack of sufficient creditors. As the BAP recognized, this is an attempt to apply policy-based case law without considering the underlying policy implications. More than seventy years ago, this Circuit announced as a “rather obvious proposition” the rale that “[sjubse-quent payment by the bankrupt of some of these creditors could not deprive the court of jurisdiction.” Reed v. Thornton, 43 F.2d 813, 813 (9th Cir.1930). This rule has been adopted by bankruptcy courts seeking to prevent debtors from paying off petitioning creditors to the detriment of other creditors as a way of avoiding the involuntary petition. See In re Carvalho Indus., Inc., 68 B.R. 254, 256 (Bankr.D.Or.1986); In re Faberge Restaurant of Florida, Inc., 222 B.R. 385, 388 (Bankr.S.D.Fla.1997). As the BAP noted, this policy concern is not implicated “when a creditor seeks to withdraw based on a misunderstanding or misrepresentation as to the purpose and effect of a joinder.” See In re Elsub Corp., 70 B.R. 797, 808-10 (Bankr.D.N.J.1987) (discussing the policy concerns of the rule and its application in other cases).
Appellants cite a single bankruptcy court case holding that a misled petitioner will not be allowed to withdraw if to do so would defeat the petition. In re Molen Drilling Co., 68 B.R. 840, 842 (Bankr.D.Mont.1987). In that case, however, granting the withdrawal would have defeated a multi-million dollar claim by the creditor solely for lack of sufficient number of involuntary petitioners under 11 U.S.C. § 303(b)(1). See id. Here, the number of creditors was still sufficient (had their claims been bona fide) even after the court granted Byron-Lambert’s withdrawal. The Molen court also supported its holding by finding that denial of the withdrawal motion was necessary to avoid collusion between the debtor and the creditors through payment of certain creditors’ claims; as noted above, this policy consideration was not implicated here.
Appellants’ contention calls for an omniscience far beyond the scope of the judiciary. At the time it made its motion, the Bankruptcy Court could well have believed that the three remaining petitioners had bona fide claims. If it had suspected that none of the other claims were bona fide, the court certainly was not obligated to force Byron-Lambert to remain a party on the chance that a bona fide creditor would turn up. The Bankruptcy court did not abuse its discretion in allowing Byron-Lambert to withdraw as an involuntary petitioner.
2. Liberty and Vortex’s Predecessors
In considering the claims of Liberty and Vortex’s predecessors, we find no new arguments raised by Appellants that were not considered and ruled upon below. We adopt and affirm the following portion of the BAP’s unpublished decision:
a-. Liberty
Liberty produces plastic parts using a high pressure mold injection process. Liberty’s claim against Debtor [ (Vortex) ] was based on an open account on which there were 17 outstanding invoices with a balance owed of $39,083.48. From 1994 through August 1995, Debtor had periodically written Liberty to apologize for and explain its payment delays. In October 1995, Debtor requested that Liberty construct a new mold in exchange for a total *992 payment of $17,475. The mold that Debt- or commissioned was never completed.
In June 1996, in response to a complaint filed by Liberty in district court in Idaho related to the open account, Debtor filed an answer and counterclaim. Debtor denied that it owed Liberty any money on the open account or that all the parts shipped to Debtor had been accepted. Additionally, Debtor pled the following affirmative defenses: (1) impossibility of performance; (2) waiver; (3) offset/course of dealing; (4) failure to mitigate; (5) offset/credit; (6) estoppel; and (7) price.
In determining that Liberty’s claim was subject to a bona fide dispute, the bankruptcy court relied on the following evidence: (1) the parties’ current pending lawsuit in Idaho in which the court had denied a motion for summary judgement^ ](2) the parties’ dispute regarding whether Liberty breached an agreement to provide a mold for Debtor, which the court held was an unanswered material question of fact; and (3) the parties’ dispute regarding whether the mold agreement was related to or dependent on Liberty’s outstanding open account.
On appeal, Petitioning Creditors contend that in determining that Liberty’s claim was subject to a bona fide dispute, the court ignored repeated admissions by Debtor regarding the existence of an open account balance. They argue that, in an attempt to defeat the Petition, Debtor asserted a counterclaim against Liberty that alleged that Liberty converted a mold, interfered with prospective economic advantage, and breached the contract for the mold’s manufacture. The Petitioning Creditors assert that the mold construction contract is separate and distinct from the parties’ open account and that the Liberty claim is not subject to bona fide dispute based on an allegedly unrelated counterclaim. See Seko Inv., 156 F.3d at 1007. Therefore, they contend that the court clearly erred in determining that this claim was subject to bona fide dispute. We disagree.
It is true that the mere existence of pending litigation or the filing of an answer is insufficient to establish the existence of a bona fide dispute. See In re Ross, 63 B.R. 951, 960-61 (Bankr.S.D.N.Y.1986); In re Onyx Telecomm., Ltd., 60 B.R. 492, 497-98 (Bankr.S.D.N.Y.1985); In re Gills Creek Parkway Assocs., 194 B.R. 59, 62-63 (Bankr.D.S.C.1995). Additionally,
The existence of a counterclaim against a creditor does not automatically render the creditor’s claim the subject of a “bona fide dispute.” So long as the petitioning creditor has established that there is no dispute regarding the debtor’s liability on the creditor’s claim, the creditor has standing under section 303(b) to bring a petition.
Seko, 156 F.3d at 1008. In contrast, the existence of affirmative defenses may suggest that a bona fide dispute exists. See 2 L. King, Collier On Bankruptcy, ¶ 303.03(2)(b)(I), at 303-23 (15th ed. rev. 1998); see also Seko Inv. 156 F.3d at 1008 (stating that § 303(b)(1) is concerned not with “who ultimately owes money to whom[;] rather, it is concerned with whether the creditor’s claim is disputed.”).
Here, the bankruptcy court had sufficient evidence from which it could conclude that Liberty’s claim was subject to bona fide dispute. In its answer, Debtor raised the defenses of impossibility of performance and waiver, alleging that when Debtor and Liberty entered into the agreement for Liberty’s manufacture of a mold, Liberty was aware that Debtor would be unable to pay the outstanding balance on the open account if it committed its resources towards the purchase of the molds. Therefore, as an *993 enticement to Debtor, Liberty agreed that any outstanding debt on the open account would be deferred and that payment of $2,000 a month would not be required until Debtor earned certain sums as a result of the completion of the first mold. By failing to complete the mold, Debtor alleged that Liberty rendered Debtor’s performance impossible. Debtor also alleged that Liberty’s failure to complete its portion of this agreement resulted in its waiver or modification of the payment terms.
Debtor’s affirmative defenses related to the interrelation of the two claims was supported by a letter dated February 28, 1996, in which Scott stated that
[w]e agreed to a specific payment plan, predicated upon the completion of the new mold and the funding we would be receiving from the marketing company. When it became obvious that the new mold would be late, you personally called me to inform me you were behind and that you knew that we would not be able to keep our payments as agreed, and stated that you had no problems with that.
....[3] Thus, this evidence establishes that the validity of Liberty’s claim is subject to bona fide dispute because Liberty’s alleged breach of the contract to construct a mold may have resulted in its waiver of its right to collect on the open account. Additionally, Liberty may have rendered impossible Debtor’s ability to make payments on the open account.
Based on this evidence, the bankruptcy court did not clearly err in finding that Liberty’s claim was subject to a bona fide dispute.

b. Vortex Lures and Higgins

Vortex Lures held the rights to a beeping fishing lure, and Viking Lures, Higgins’ assignor, held the rights to a blinking fishing lure. On October 1, 1990, Higgins and Scott executed an agreement (the “Vortex Agreement”) to form Debtor in order to market the fishing lures. The agreement provided that the corporation would assume liabilities under “HIGGINS’ and VORTEX LURES royalty agreements and any liabilities thereunder in favor of VIKING LURES and VORTEX LIMITED PARTNERSHIP.”.... The Vortex Agreement further provided that it was governed by Montana law. In a June 14, 1994 letter (the “June Letter”) from Scott to Higgins, Scott stated that the parties needed to resolve “subordination of the Vortex Lures Limited Partnership and Viking Lures obligation to my debt.”_
Based on the assignment of claims that Higgins filed with the court, the basis for his claim is a 1985 agreement (the “1985 Agreement”) in which Vortex Lures agreed to purchase Viking Lures’ assets. At the time of its assignment of its claim to Higgins, Viking Lures believe that it was due $200,000 from Vortex Lures and that the liability could be collected from Debtor as Vortex Lures’ successor-in-interest.
*994 The bankruptcy court held that the claims of Vortex Lures and Higgins were subject to a bona fide dispute because of the following: (1) a dispute over whether the Texas or Montana statute of limitations applied; (2) a legitimate dispute as to when the statute of limitations began to run; and (3) a dispute as to whether Debt- or was liable for the claims. In support of the last finding, the court noted that the Vortex Agreement had not been signed by an officer of Debtor or a person on behalf of the debtor and that Debtor lacked a board resolution or minutes showing the adoption of the Vortex Agreement.
On appeal, Petitioning Creditors contend that the court clearly erred because (1) the Vortex Agreement legally obligated Debt- or to the claims of both Vortex Lures and Higgins, (2) Montana law governed the Vortex Agreement because it was executed in Montana, contemplated the formation of a Montana corporation, and was to be performed in Montana, and (3) the statute of limitations for actions on a written contract in Montana is eight years and the acknowledgment of a debt in writing and signed by the party to be charged tolls the statute of limitations. Petitioning Creditors assert that Scott acknowledged the existence of the objections in the June Letter and that this tolled the statute of limitations. Therefore, Petitioning Creditors contend that the court clearly erred in finding that their claims were subject to a bona fide dispute. We disagree.
First, the evidence does not clearly establish that Debtor assumed liability for these claims when the Vortex Agreement was executed. Higgins’ claim is purportedly based on the 1985 Agreement. However, the Vortex Agreement provided only that Debtor assumed royalty agreements and liabilities thereunder in favor of Viking Lures and Vortex Lures. The 1985 Agreement does not appear to be a royalty agreement. Second, to the extent that the claims were based on royalty agreements, Debtor submitted evidence to establish that the claims pertained to an October 1, 1986 agreement with Utex Industries (“Utex”) that created a royalty payment obligation and debt (the “Utex Agreement”). The Utex Agreement obligated Utex to pay Higgins, as Vortex Lures’ agent, 5% of the gross sales revenues of fishing lures on a monthly basis until the total amount paid totaled $109,500. The Utex Agreement was to terminate once Higgins had been paid this sum or when Utex ceased its manufacture of the fishing lures, which it did in 1988. The Utex Agreement provided that it was governed by Texas law. Because Utex ceased its manufacturing prior to the execution of the Vortex Agreement, Debtor disputed that it owed Vortex Lures or Higgins any money as a result of the Utex Agreement. From this, the court could find that the claims of Vortex Lures and Higgins were the subject of bona fide dispute.
Additionally, based on the dispute over the source of any liability owed to Higgins and Vortex Lures, there is a substantial disagreement as to which state’s statute of limitations is applicable. In a bankruptcy case, the court must apply federal choice of law rules. See Lindsay v. Beneficial Reinsurance Co. (In re Lindsay), 59 F.3d 942, 948 (9th Cir.1995). Federal choice of law rules follow the approach of the Restatement (Second) of Conflict of Laws. See Chuidian v. Philippine Nat’l Bank, 976 F.2d 561, 564 (9th Cir.1992). Under the Restatement, if the claims of Vortex Lures and Higgins are based on the Utex Agreement, Texas law may apply. See Restatement (Second) Of Conflict Of Laws § 187 (1989).[ ] Under Texas law, an action on a contract must be brought within four years of the date the cause of action accrues. See Tex. Civ. Prac. & Rem.Code Ann. § 16.004(c) (Ver *995 non 1999); Kansa, Reinsurance Co. v. Congressional Mortgage Corp., 20 F.3d 1362, 1369 (5th Cir.1994). An acknowledgment of the validity of a claim is admissible to defeat the statute of limitations if it is in writing and signed by the party to be charged. See Tex Civ. PraC. & Remx. Code Ann. § 16.065 (Vernon 1999). Even if the June Letter was considered an acknowledgment of the claims’ validity, the claims would still be time-barred because the statute of limitations would have run in June 1998 and the Petition was not filed until 1999. Thus, the claims of Vortex Lures and Higgins would be barred by the statute of limitations and subject to a bona fide dispute.
However, if the claims are not governed by the Utex Agreement, then the court must apply Arizona choice of law rules to determine which statute of limitations applies. See Restatement (Second) Of Conflict Of Laws § [142] (1989). Arizona has adopted the approach set forth in § 142 of the Restatement (Second) of Conflicts of Laws. See DeLoach v. Alfred, 192 Ariz. 28, 960 P.2d 628, 630-31 (1998) (en banc). This section provides that the forum state will apply its own statute of limitations unless “(a) maintenance of the claim would serve no substantial interest of the forum; and (b) the claim would be barred under the statute of limitations of a state having a more significant relationship to the parties and the occurrence.” Restatement (Second) Of Conflict Of Laws § 142(2) (1989). If Montana law were applied, then the statute of limitations was eight years, but could run anew if there was an acknowledgment of the debt in writing that was signed by the party to be charged. See Mont. Code Ann. §§ 27-2-202, 27-2-409 (1999). If the June Letter was considered an acknowledgment, then the claims of Vortex Lures and Higgins would not be time-barred because the statute of limitations would have run anew commencing June 14, 1994. Similarly, if Arizona law applied, then the claims were time-barred if they were not brought within six years after the causes of action accrued, although the statute of limitations would have run anew if the June Letter was considered an acknowledgment of the debt in writing that was signed by the party to be charged. See Ariz. Rev. Stat. §§ 12-548, 12-508 (1999). Therefore, the court did not clearly err in holding that the claims of Vortex Lures and Higgins were subject to a bona fide dispute as evidenced by the dispute over the statutes of limitations.
Nor did the court commit clear error when it held that if the claims were based on the Vortex Agreement rather than the Utex Agreement, there was ■ a bona fide dispute as to whether Debtor was liable for the claims of Vortex Lures and Higgins under corporate law. Under Restatement (Second) of Conflicts of Laws § 187, there is an issue of whether the law of Montana, as the state of Debtor’s incorporation, or the law of Arizona, the forum state, applies. Under Montana law,
whenever the promoters of a corporation, in advance of its incorporation, enter into a contract intended to inure to the benefit of the company to be organized, and the company, after coming into being, recognizes, assumes, and takes the benefit of such a contract, it will be bound to perform it, on the familiar principle of the law of contracts that one who adopts the benefits of an act which another volunteers to perform for him or in his behalf is bound to take the burdens with the benefits.
Caird Eng’g Works v. Seveiu-Up Gold Mining Co., Ill Mont. 471, 111 P.2d 267, 283 (1940). However, a legal entity must act in its corporate capacity before it will be held liable, because the mere act of incorporation alone is insufficient. *996 See Kirkup v. Anaconda Amusement Co., 59 Mont. 469, 197 P. 1005, 1007 (1921). The law in Arizona is similar. See John Deere Co. v. First Interstate Bank of Ariz., 147 Ariz. 256, 709 P.2d 890, [895] (App.1985) (stating that “[a] corporation may be bound on an agreement made in its name by its promoters prior to incorporation where the corporation subsequently adopts the agreement by express ratification or by acceptance of benefits related to it” and holding that a corporation impliedly ratified a financing statement entered into by a 'promoter by acting pursuant to it for ten years). The court found that there were not corporate minutes or board resolution that expressly ratified the Vortex Agreement. Thus, the question of whether Debtor either expressly or impliedly ratified the Vortex Agreement by other acts or conduct is in bona fide dispute.
Accordingly, the court did not clearly err in determining that the claims of Vortex Lures and Higgins were subject to bona fide disputes.
In re Vortex, No. AZ-99-1310-RyKP (9th Cir. BAP1999) (unpublished disposition) (footnotes and citations to the record omitted)
3. Remaining Petitioning Creditors
We have no reason to consider whether the claims of the Vincents, Witchcraft Tape Products, and Telenational Marketing were bona fide and, if so, should have been considered by the Bankruptcy Court in determining the adequacy of the involuntary petition under § 303(b)(1). Their. aggregate claims total only $9,520.26, which is more than a thousand dollars below the statutory floor of $10,775 set out in §§ 303(b) and 104 for the filing of an involuntary petition. Their claims, even if bona fide, are therefore not sufficient to maintain an involuntary bankruptcy proceeding, and the question is moot.
B.
Pursuant to a court order, on March 22, 1999, Vortex submitted a list of its creditors to the Bankruptcy Court. It was agreed that this list could not be released without a court order. Appellants never moved for the list to be released. Instead, they argue that the Bankruptcy Court was required to notify each of the creditors on the list of the pending involuntary petition. They base their claim on Bankruptcy Rule § 1003(b), which reads:
(b) Joinder of petitioners after filing If the answer to an involuntary petition filed by fewer than three creditors avers the existence of 12 or more creditors, the debtor shall file with the answer a list of all creditors with their addresses, a brief statement of the nature of their claims, and the amounts thereof. If it appears that there are 12 or more creditors as provided in § 303(b) of the Code, the court shall afford a reasonable opportunity for other creditors to join in the petition before a hearing is held thereon.
Fed. R. Bank P. 1003. The purpose of this rule is to allow petitioners who discover that a debtor has more than twelve creditors to join additional creditors in order to prevent their involuntary petition from failing for insufficient petitioners. See 11 U.S.C. § 303(b)(1); In re Kidwell, 158 B.R. 203, 209 (Bankr.E.D.Cal.1993); In re Iowa Coal Min. Co., Inc., 242 B.R. 661, 668 (Bankr.S.D.Iowa 1999); Elsub, 70 B.R. at 799-800. Here, more than three putative creditors filed the involuntary petition; the provisions of § 1003(b) were therefore not triggered.
C.
Under 11 U.S.C. § 303(h)(1), relief can be ordered on an involuntary petition “only if ... the debtor is generally not paying *997 such debtor’s debts as such debts become due unless such debts are the subject of a bona fide dispute.” The Bankruptcy Court and the BAP found that Vortex was generally paying its debts as they came due, as evidenced by a favorable Dun & Bradstreet credit report and the fact that Vortex “has been paying and is remaining current with its tax obligations, payroll, rent, utilities, and operating expenses.”
As an initial matter, neither party appears to contest that whether Vortex was generally paying its debts as they came due is a question of fact reviewed for clear error. See In re Concrete Pumping Serv., Inc., 943 F.2d 627, 630 (6th Cir.1991).
Appellants contend that a “balance sheet test” would show that Vortex’s assets are less than its liabilities, and that the court therefore clearly erred in finding Vortex could be generally paying its debts. The Bankruptcy Court correctly found that the “balance sheet” test was not dis-positive. The Ninth Circuit has adopted a “totality of the circumstances” test for determining whether a debtor is generally not paying its debts under 11 U.S.C. § 303(h). In re Bishop, Baldwin, Rewald, Dillingham & Wong, Inc., 779 F.2d 471, 475 (9th Cir.1985). This approach has been “developed by several bankruptcy, district, and circuit courts.” Federal Fin. Co. v. DeKaron Corp., 261 B.R. 61, 65 (S.D.Fla.2001). See also General Trading Inc. v. Yale Materials Handling Corp., 119 F.3d 1485, 1504 n. 41 (11th Cir.1997) (“In determining whether a debtor is generally paying its debts as they become due, courts ‘compare the number of debts unpaid each month to those paid, the amount of the delinquency, the materiality of the non-payment, and the nature of the [d]ebt- or’s conduct of its financial affairs.’ ”) (citing In re Leek Corp., 52 B.R. 311, 314 (Bankr.M.D.Fla.1985)); Concrete Pumping, 943 F.2d at 630.
A finding that a debtor is generally not paying its debts “requires a more general showing of the debtor’s financial condition and debt structure than merely establishing the existence of a few unpaid debts.” In re Dill, 731 F.2d 629, 632 (9th Cir.1984). Vortex has been paying off the debts it has incurred, including a full settlement of' the IRS deficiency that was assessed during Higgins’ leadership. Looking at the totality of the circumstances, the Bankruptcy Court did not clearly err in finding that Vortex was generally paying its debts as they came due.
IV.
This appears to be an acrimonious business dispute that has gotten out of hand. Although some of these claims may eventually be adjudged meritorious in state court, most are not bona fide claims for purposes of filing an involuntary bankruptcy petition. The three remaining claims do not aggregate $10,775 as required by 11 U.S.C. §§ 303(b)(1) & 104. Because more than three petitioners filed the initial involuntary petition, notification of other creditors was not required under the joinder provisions of Bankruptcy Rule § 1003(b). The bankruptcy court did not clearly err in finding that Vortex was generally paying its debts as they came due.
AFFIRMED.

. On May 8, 2001, Liberty Tool notified the Court that it had reached a global settlement with Vortex and dropped this appeal. This fact makes no difference to the legal analysis in this case, as we look to the petition as it was originally filed. See Matter of Bishop, Baldwin, Rewald, Dillingham & Wong, Inc., 779 F.2d 471, 475 (9th Cir.1985); In re Coburn, 126 F. 218 (D.Mass.1903). We note, however, that only Higgins and the creditors represented by him remain parties to this dispute.

. This does not disturb our earlier holding in Seko that a dispute as to the amount of a claim is not a bona fide dispute if it is based on a counterclaim arising from a wholly separate transaction. 156 F.3d at 1008-09.

. [Appellants contend that the Bankruptcy Court and BAP erred in relying on a letter by Scott as evidence that the open account was related to the mold dispute. The Bankruptcy Court ruled that “testimony submitted by or on behalf of Higgins and [Scott] is not credible because either testimony is tainted, biased, and blinded from their past hostile relationship and history that derived from their past struggle over the operation and control over the involuntary debtor.” The letter referenced, however, was not submitted by Scott but rather by Liberty. Moreover, the Liberty/Vortex dispute does not implicate the hostility and possible bias of the Higgins/Scott dispute. Given that credibility goes to the weight of the evidence and not its admissibility, Davis v. Alaska, 415 U.S. 308, 317, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974), the Court did not err in considering this letter in combination with the pending litigation.]