IKUTA, Circuit Judge,
dissenting:
The initiation of an involuntary bankruptcy case can have substantial consequences for a debtor, including “loss of credit standing, inability to transfer assets and carry on business affairs, and public embarrassment.” In re Reid, 773 F.2d 945, 946 (7th Cir.1985). To avoid potential abuses, the Bankruptcy Code precludes creditors from forcing debtors into bankruptcy based on claims that are subject to a bona fide dispute, 11 U.S.C. § 303(b)(1), and we have required bankruptcy courts to scrutinize such claims on a case-by-case basis. See In re Vortex Fishing Sys., Inc. (Vortex), 277 F.3d 1057, 1064 (9th Cir. 2001). But the majority departs from this precedent, adopting an unsupported per se rule that claims arising from certain state court judgments are never subject to a bona fide dispute. This new rule creates a circuit split, see In re Byrd, 357 F.3d 433, 438 (4th Cir.2004) (rejecting this per se rule), is contrary to our case law, see Vortex, 277 F.3d at 1064, and erases a protection given to debtors under the Code. I respectfully dissent.
I
A
In this case, a state court awarded some $95.3 million in damages to three of Marciano’s former employees for defamation and intentional infliction of emotional distress. See Fahs v. Marciano, No. BC 375824 *1130 (Cal.Super.Ct. July 29, 2009); Ckapnick v. Marciano, No. BC375824 (Cal.Super.Ct. July 29, 2009); Tagle v. Marciano, No. BC375824 (Cal.Super.Ct. July 30, 2009). The jury making this award did not consider Marciano’s response to the employees’ complaints, because the state court struck Marciano’s answer and entered his default as a discovery sanction. Marciano appealed the judgments, but did not obtain a stay of the judgments pending appeal. See In re Marciano (Marciano I), 446-B.R. 407, 416-17 (Bankr.C.D.Cal.2010). While the appeal was pending, the three employees filed an involuntary petition against Marciano based on these judgments. Id. at 417.
Marciano argues, as he did before the bankruptcy court and bankruptcy appellate panel, that at the time the involuntary petition was filed, the claims arising from these judgments were “the subject of a bona fide dispute as to liability or amount” for purposes of § 303(b). Both bankruptcy courts rejected Marciano’s argument without undertaking the case-specific inquiry required by our precedent. See Marciano I, 446 B.R. at 424; In re Marciano (Marciano II), 459 B.R. 27, 54-55 (9th Cir. BAP 2011); but see Marciano II, 459 B.R. at 59-62 (Markell, J., dissenting) (arguing that the per se rule is inconsistent with § 303(b)’s text and Ninth Circuit precedent). Instead of correcting this error, the majority today signs off on the bankruptcy courts’ shortcut, and decides as a matter of law that there cannot be “an objective basis for either a factual or a legal dispute as to the validity,” Vortex, 277 F.3d at 1064, of a claim based on an unstayed state court judgment, see Maj. op. at 1126. This is contrary to the text of the statute and our case law.
B
Section 303(b) of the Code specifies the circumstances in which creditors can place a debtor into involuntary bankruptcy.[1] Because “[t]he filing of an [i]nvoluntary [p]etition should not be lightly undertaken,” Higgins v. Vortex Fishing Sys., Inc. (Higgins), 379 F.3d 701, 707 (9th Cir.2004) (quoting In re Advance Press & Litho, Inc., 46 B.R. 700, 702 (Bankr.D.Colo. 1984)), Congress created safeguards to “discourage inappropriate and frivolous filings.” Id. Among other things, at least three creditors must join forces to commence an involuntary case against a debt- or like Marciano, and each of them must hold a claim “that is not contingent as to liability or the subject of a bona fide dispute as to liability or amount.” § 303(b)(1).
In Vortex, we adopted “the objective test used by the other circuits”' for determining whether there is a “bona fide dispute” under § 303(b). 277 F.3d at 1062. The test requires courts to “determine whether there is an objective basis for either a factual or a legal dispute as to the validity of the debt.” Id. at 1064 (quoting In re Busick, 831 F.2d 745, 750 (7th Cir. 1987)). This is a factual inquiry. Id. “A bankruptcy court is not asked to evaluate the potential outcome of a dispute, but merely to determine whether there are *1131 facts that give rise to a legitimate disagreement over whether money is owed, or, in certain cases, how much.” Id. By requiring a factual, case-by-case inquiry into the nature of each claim, Vortex precludes the majority’s per se rule.
The Fourth Circuit reached the same conclusion in Byrd. In considering “whether an unstayed state court judgment that is pending appeal can constitute a ‘bona fide dispute’ for purposes of the Bankruptcy Code,” 357 F.3d at 435-36, Byrd first adopted the same “objective test” for determining the existence of a bona fide dispute as we adopted in Vortex. See id. at 437. The Fourth Circuit then declined to adopt any per se rule that claims based on unstayed state court judgments can never be in “bona fide dispute.” Id. at 438. Byrd’s reasoning was straightforward: even after judgment is rendered in a state case, “substantial questions may remain about a debtor’s liability, notwithstanding judgments in a creditor’s favor.” Id. (quoting In re Prisuta, 121 B.R. 474, 476 (Bankr.W.D.Pa.1990)). Although “it will be the unusual case in which a bona fide dispute exists in the face of claims reduced to state court judgments,” state court judgments hardly “guarantee the lack of a bona fide dispute,” particularly in the absence of an appellate ruling or “in the face of contrary rulings by other” state trial courts. Id.
Byrd’s reasoning is clearly applicable here. Given the circumstances of the $95 million judgments against Marciano, the bankruptcy court was at least bound to consider whether there were legitimate questions regarding Marciano’s liability and the amount of damages, as well as whether the trial court’s conclusion was contrary to the rulings of other state courts. See, e.g., id. As later events showed, Marciano’s contention that the employees’ claims were subject to a bona fide dispute as to amount was well justified: the state appellate court ultimately reduced the amount of each award to $10 million. See Gottlieb v. Fahs, No. B218087, 2012 WL 5310004, at *1 (Cal.Ct. App. Oct. 29, 2012). Under these circumstances, the bankruptcy court erred in failing to apply the Vortex test to determine whether there was an objective basis for a dispute as to the validity of the creditors’ claims.
II
Instead of adhering to our precedent and following the Fourth Circuit’s well-reasoned lead, the majority adopts a shortcut solution that skips over the safeguard of scrutinizing claims carefully before placing a debtor in involuntary bankruptcy. None of the majority’s reasons for enunciating this new per se rule withstands scrutiny.
A
First, the majority errs in concluding that an immediately enforceable judgment is equivalent to an undisputed claim. Maj. op. at 1126-27. The majority’s reasoning seems to be that once a claim is reduced to judgment, the judgment is a “claim,” and because an unstayed state court judgment is immediately enforceable, there can be no objective basis for dispute as to the “claim’s” liability or amount. Id. Both parts of this analysis are wrong. First, the Code’s definition of “claim” does not include “judgment.” Section 101(5) of Title 11 defines “claim” to mean a “right to payment, whether or not such right is reduced to judgment.” Id. (emphasis added). As this language makes clear, a claim is a “right to payment,” not a “judgment,” and it is irrelevant whether the right to payment has been reduced to judgment. Reading § 101(5) and § 303(b) together, therefore, the bankruptcy court must de *1132 termine whether the right to payment is subject to a bona fide dispute, not whether any resulting judgment is subject to such a dispute.
Once this error is corrected, it is clear that the immediate enforceability of an unstayed judgment has no bearing on whether there is “an objective basis for either a factual or a legal dispute as to the validity of the debt.” Vortex, 277 F.3d at 1064. If a “judgment” is not a “claim,” then it is irrelevant whether the enforceability of a judgment is beyond dispute. See, e.g., In re Henry S. Miller Commercial, LLC, 418 B.R. 912, 920 (Bankr. N.D.Tex.2009) (“[A]ll of the courts that conclude that an unstayed judgment (even if on appeal) is not a claim that is the subject of a bona fide dispute seem to conflate the concept of ‘enforceable judgment’ with the concept of there being a claim that is not subject to a bona fide dispute.”). Under California law, a creditor’s claim may be subject to a bona fide dispute, and the debtor may ultimately prevail on appeal, even if the creditor has enforced an unstayed judgment issued by the trial court. If the debtor does ultimately prevail on appeal, a court can simply unwind the creditor’s collection efforts. See Stockton Theatres, Inc. v. Palermo, 121 Cal.App.2d 616, 264 P.2d 74, 78 (1953); 9 Witkin, Cal. Proc. 5th, §§ 900-03 (2008). When a judgment is reversed, both the appellate court and the trial court will attempt “to place the parties in as favorable a position as they could have been in had the judgment!] not been enforced pending appeal.” Gunderson v. Wall, 196 Cal.App.4th 1060, 126 Cal.Rptr.3d 880, 883 (2011) (internal quotation marks omitted); Cal.Code Civ. P. § 908 (“When the judgment or order is reversed or modified, the reviewing court may direct that the parties be returned so far as possible to the positions they occupied before the enforcement of or execution on the judgment or order.”).
Because an unstayed state judgment is not a “claim,” and because the immediate enforceability of a judgment is irrelevant to the § 303(b) inquiry, neither argument justifies the majority’s per se rule.
B
The majority likewise errs in ignoring the objective test we enunciated in Vortex. Although the majority claims that Vortex is distinguishable on its facts, and should be read as applying only to “contract claims not yet reduced to judgment,” Maj. op. at 1127, this purported distinction is plainly wrong. We first noted in Vortex that “[t]his Circuit has not defined a ‘bona fide dispute’ ... nor is it defined by statute.” Vortex, 277 F.3d at 1064. We then considered the objective test enunciated by the Seventh Circuit, and noted that “all other circuit courts that have considered the question have adopted some variation” of this objective test. Id. After considering and rejecting the use of a subjective test, we stated that “[w]e join our sister circuits in adopting the objective test for dispute regarding liability or amount.” Id. Clearly, our articulation of the objective test in Vortex (expressly joining the other circuits that had adopted the test) was not dependent on the facts of that case, but rather provided the circuit’s construction of “subject to a bona fide dispute” in § 303(b).
Alternatively, the majority asserts that its per se rule is consistent with Vortex, because a per se rule is even more “objective” than the Vortex test. Maj. op. at 1127. This makes little sense. The Vortex test does not require courts to be “objective” in some unspecified manner, but rather to “determine whether there is an objective basis for either a factual or a *1133 legal dispute as to the validity of the debt.” Vortex, 277 F.3d at 1064 (quoting In re Busick, 831 F.2d 745, 750 (7th Cir.1987)) (emphasis added). In other words, Vortex requires a particular objective approach, and one which is inconsistent with the majority’s approach.
C
The majority also argues that “the Byrd approach runs counter to principles of federalism,” Maj. op. at 1128, by failing to give state court judgments “full faith and credit” in accordance with the Full Faith and Credit Act, see 28 U.S.C. § 1738.[2] This argument is unavailing.
The Full Faith and Credit Act requires federal courts to give state court judgments the same “full faith and credit” they would receive in courts of that state. See Matsushita Elec. Indus. Co. v. Epstein, 516 U.S. 367, 373, 116 S.Ct. 873, 134 L.Ed.2d 6 (1996). Generally, this means that federal courts must “apply the pertinent state’s collateral estoppel principles.” In re Cantrell, 329 F.3d 1119, 1123 (9th Cir.2003); see also Grogan v. Garner, 498 U.S. 279, 284 n. 11, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). In this case, for instance, § 1738 requires us to give the California judgment against Marciano the same preclusive effect it would have in state court. Thus, under California issue preclusion rules, we are barred from reconsidering Marciano’s liability, see In re Diamond, 285 F.3d 822, 828-29 (9th Cir. 2002), or from adjusting the amount awarded to the state court plaintiffs, see In re Sasson, 424 F.3d 864, 872 (9th Cir.2005), since these issues were already fully adjudicated in state court.
But giving effect to the language of § 303(b) does not require federal courts to reassess liability or the amount of a state court judgment. As Byrd explained in rejecting a similar argument, the question whether the parties could relitigate liability or amount is not related to the question whether the debtor’s appeals “themselves constituted genuine disputes.” Byrd, 357 F.3d at 440. A bankruptcy court does not relitigate the debtor’s liability “by inquiring into the genuineness” of the debtor’s appeals for purposes of § 303(b), because in doing so it does not “actually resolv[e] any disputed question of fact or law.” Id. at 44CM1. We have recognized in other settings that the question whether a determination is subject to a genuine dispute is separate from determining the merits of that dispute. See, e.g., 28 U.S.C. § 1292(b)(1) (2006) (allowing district court judges to certify interlocutory appeals of orders involving “a controlling question of law as to which there is substantial ground for difference of opinion”); Slack v. McDaniel, 529 U.S. 473, 484, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000) (certificates of appealability may issue if “the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right.”).
*1134 In short, determining whether a claim based on a state court judgment is subject to a bona fide dispute does not require us to relitigate any issue decided in ’a state court proceeding. Therefore, the natural reading of § 303(b)(1), under which federal bankruptcy courts must determine whether such a bona fide dispute exists, is entirely consistent with the Full Faith and Credit Act.
D
The majority’s legislative history argument likewise fails. The majority asserts that legislative history shows that the Bankruptcy Reform Act “was designed to lighten the burden for creditors seeking to file an involuntary bankruptcy petition.” Thus, according to the majority, § 303(b)(1) “should not be read as sub silentio lowering the status of unstayed state court judgments.” Maj. op. at 1128.
Yet, as is so often the case, different portions of the same legislative history point in the other direction, and suggest that the “bona fide dispute” language was added to protect debtors from threats of involuntary bankruptcy by creditors holding claims of questionable validity. See 130 Cong. Rec. S.7,618 (daily ed. June 19, 1984) (statement of Sen. Baucus) (“I believe this amendment, although a simple one, is necessary to protect the rights of debtors and to prevent misuse of the bankruptcy system as a tool of coercion.”); 148 Cong. Rec. S.11,728 (daily ed. Nov. 20, 2002) (statement of Sen. Baucus) (“[A]n involuntary bankruptcy action should not be employed by litigants seeking to gain more leverage than they would have if they disputed contract performance in the proper judicial forum.”); see also Lawrence Ponoroff, Involuntary Bankruptcy and the Bona Fides of a Bona Fide Dispute, 65 Ind. L. J. 315, 335 (1990) (noting that these “remarks evince a revived concern about the potentially ruinous consequences which the initiation of an involuntary proceeding can have on a debtor’s business.”). At best, the evidence we have about Congress’s intentions and purposes with respect to the “bona fide dispute” language is limited and ambiguous. The majority thus falls into the dangerous trap of “allowing ambiguous legislative history to muddy clear statutory language.” Milner v. Dep’t of the Navy, —U.S.-, 131 S.Ct. 1259, 1266, 179 L.Ed.2d 268 (2011).
E
Finally, the majority turns to policy, and asserts that its per se “approach well serves a central purpose of the involuntary bankruptcy laws — to ‘protect the threatened depletion of assets or to prevent the unequal treatment of similarly situated creditors.’ ” Maj. op. at 1128 (quoting In re Manhattan Indus., Inc., 224 B.R. 195, 200 (Bankr.M.D.Fla.1997)). But the Code does not instruct courts to pursue this goal at all costs. “The Bankruptcy Code does not require that a debtor’s assets be dissipated while frivolous or hopeless appeals wend their way through the courts, but neither does it permit debt collection by every creditor that has reduced its claims to judgment.” Byrd, 357 F.3d at 441. To the contrary, the “bona fide dispute” language in § 303(b)(1) functions as a safeguard against abuses of involuntary bankruptcy. After today’s opinion, that safeguard may now be circumvented.
Ill
Under Vortex, the majority should have examined whether there was an objective basis for Marciano’s contention. By ignoring this case-specific inquiry in favor of a per se rule, the majority has erroneously elevated judicial efficiency above Congress’s clear commands, ignored our own *1135 precedent, and created a circuit split. This result is especially worrisome in the context of bankruptcy, where uniformity is sufficiently important that our Constitution authorizes Congress to establish “uniform laws on the subject of bankruptcies throughout the United States.” U.S. Const. Art. I, § 8, cl. 4.
We could have avoided these problems merely by following the language of the statute as interpreted by our precedent. Because we failed to do so, I respectfully dissent.

. Subsection (b), in relevant part, states:
(b) An involuntary case against a person is commenced by the filing with the bankruptcy court of a petition under chapter 7 or 11 of this title—
(1) by three or more entities, each of • which is either a holder of a claim against such person that is not contingent as to liability or the subject of a bona fide dispute as to liability or amount, or an indenture trustee representing such a holder, if such noncontingent, undisputed claims aggregate at least $14,425 more than the value of any lien on property of the debtor securing such claims held by the holders of such claims
11 U.S.C. § 303(b)(1) (emphasis added).

. 28 U.S.C. § 1738 states, in relevant part:
The records and judicial proceedings of any court of any such State, Territory or Possession, or copies thereof, shall be proved or admitted in other courts within the United States and its Territories and Possessions by the attestation of the clerk and seal of the court annexed, if a seal exists, together with a certificate of a judge of the court that the said attestation is in proper form.
Such Acts, records and judicial proceedings or copies thereof, so authenticated, shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken.