**In re MANHATTAN INDUSTRIES, INC., Debtor.**

**Bankruptcy No. 97–06554–6B7.**

United States Bankruptcy Court,
M.D. Florida,
Orlando Division.

Dec. 18, 1997.

Lawrence M. Kosto, Orlando, FL, for debtor.

Lynn James Hinson, Orlando, FL, for Manhattan Bagel Company, Inc.

### *MEMORANDUM OPINION*

ARTHUR B. BRISKMAN, Bankruptcy Judge.

This matter came before the Court on Debtor's, Manhattan Industries, Inc., Motion to Dismiss Involuntary Petition (Doc. 7). Appearing before the Court were Lawrence Kosto, attorney for Debtor, Manhattan Industries, Inc.; and Lynn Hinson, attorney for petitioning creditor, Manhattan Bagel Company, Inc. After reviewing the pleadings, evidence, exhibits, hearing live testimony and arguments of counsel, the Court makes the following Findings of Fact and Conclusions of Law.

### *FINDINGS OF FACT*

Manhattan Bagel Company, Inc. ("MBC") instituted an involuntary bankruptcy petition against Manhattan Industries, Inc. ("Debtor") on August 12, 1997, seeking the Court to enter an order for relief for the Debtor under Chapter 7 of the Bankruptcy Code made pursuant to 11 U.S.C. § 303.[1] The Debtor objected to the entry of an order for relief and filed a Motion to Dismiss (Doc. 7) based upon MBC's lack of standing to file the involuntary petition as their claim is the subject of a bona fide dispute. Alternatively, the Debtor claims that this involuntary petition filed by MBC was not filed in good faith.

1. MBC filed a voluntary petition under Chapter 11 of the Bankruptcy Code in the District of New Jersey on November 19, 1997 (Case No. 97–053360). The parties have stipulated that the automatic stay imposed pursuant to § 362 in MBC's bankruptcy case does not effect the disposition of the Debtor's Motion to Dismiss.

MBC makes and distributes bagels to established franchise operations throughout the United States. The Debtor and MBC entered into a Franchise Agreement ("Franchise Agreement") in August 9, 1994. The Debtor agreed to operate a franchise store in Melbourne, Florida ("Melbourne franchise") and pursuant to the terms of the Franchise Agreement, the Debtor deposited its franchise fee in the amount of $30,000.

The Debtor was interested in opening two more franchise stores in Orlando ("Orlando franchise") and Altamonte Springs, Florida ("Altamonte franchise"). While no documents were executed by the Debtor and MBC with respect to the Debtor being awarded a franchise in either of these two locations, the Debtor made deposits guaranteeing that MBC would grant the Debtor stores in Orlando and Altamonte Springs. The Debtor deposited franchise fees and security deposits in the amount of $32,911.00 for the Orlando franchise and $29,867.10 for the Altamonte franchise. MBC has retained these deposits despite the Debtor not being awarded the two franchise locations. The fees and deposits retained totals $62,778.10.

MBC sent the Debtor a letter on March 6, 1995, agreeing to refund the Debtor's deposited franchise fees and security deposits. The letter states the following:

Due to the fact that the additional two stores [Altamonte Springs and Orlando] still require financing and are putting pressure on everyone, we agree to look for franchisees to buy the stores. The downtown [Orlando] location may just end up not being a Manhattan Bagel store anyway.... When we get the [Altamonte Springs] location sold, **your franchise fee will be returned along with the returned rent security deposit**.... When either we terminate the downtown spot and get as much of the rent deposit back as we can, or the store is sold to a new franchisee, **your franchise fee and the rent deposit he [sic] returns will be refunded.** (emphasis added).

Substantial disputes have existed between the Debtor and MBC since the beginning of their relationship. The Debtor claims that MBC incurred but has not paid, telephone and other utility charges made prior to the Debtor opening the Melbourne franchise. The Debtor contends that MBC overcharged it for a neon sign used at the Melbourne franchise and that it failed to engage in advertising efforts pursuant to the terms of the Franchise Agreement. MBC claims that it is owed $9,585.31 for product and advertising fees.

The Debtor filed suit in the Monmouth County, New Jersey, Circuit Court (Docket No. L–644–96) against MBC and two other defendants on February 5, 1996 (the "New Jersey proceedings"). The complaint seeks compensatory and punitive damages in excess of $400,000.00 related to MBC's fraudulent and misrepresentation in its dealings with the Debtor. The Debtor seeks to rescind the existing Melbourne Franchise Agreement and a return of its total out of pocket expenses of $260,000.00. MBC filed an answer to the complaint and did not file a counterclaim. The suit is still pending as of the date of this involuntary bankruptcy petition and the parties are engaged in extensive discovery.

The Debtor did not make a profit for the nearly two and one-half years the Melbourne franchise was open. Financial problems escalated and the Debtor was unable to meet its rental obligations for the Melbourne franchise. The Debtor was in arrears for a number of months. The Debtor did not pay rent as required for the months of October 1996 through January 1997. MBC filed an eviction proceeding in the Eighteenth Judicial Circuit, Brevard County, Florida (Civil Action No. 96–20010–CC–3) seeking to evict the Debtor from the premises and recover unpaid monthly rent payments (the "Florida proceedings").

A default judgment was entered by the state court on March 27, 1997, against the Debtor in the amount of $22,782.84. The Debtor did not appeal the default judgment nor did it move to have it set aside. The Debtor did not contest the entry of the default judgment or the jurisdiction of the Florida proceedings.

The Debtor has no assets other than the claims asserted in the New Jersey proceedings against MBC and two defendants. The

Debtor has no cash flow or employees. The Debtor was not transferring assets to outside entities nor preferring it creditors. MBC filed its single-creditor involuntary petition against the Debtor asserting that the default judgment entered in Florida proceedings against the Debtor is not subject to a bona fide dispute, and thus it has standing to file an involuntary bankruptcy petition. The Debtor is indebted to the Internal Revenue Service, the Florida Department of Revenue, and American Express Tax and Business Services, Inc.[2] The Debtor has less than twelve creditors.

A bona fide dispute exists as to the indebtedness the Debtor owes MBC. MBC judgment claim of $22,782.84 is offset by MBC's withholdings of Debtor's franchise fees and security deposits in the amount of $62,778.10.

The Debtor has no assets for the benefit to creditors other than the recovery of claims in the New Jersey proceedings. The Debtor was not preferring its creditors or transferring its property to other entities prior to the filing of this petition. MBC's objective in filing the involuntary petition was an effort to affect the Debtor's position in the New Jersey proceedings. MBC's motivation for filing the involuntary petition was ascertained at the October 29th hearing in which MBC's attorney responded as follows:

> The Court: But you filed this [involuntary petition] because they sued you and you wanted to get rid of the lawsuit?

> Mr. Hinson: Judge, that's not the only reason this was filed. Clearly my clients believes there may be other claims that this entity has that could be administered by a trustee to recover for the benefit of these creditors. (Final Hearing Tr. at 52).

One of the principal reasons of this petition was MBC's intent to frustrate the results of the New Jersey proceedings. MBC thus did not act in good faith in filing its involuntary bankruptcy petition.

**2.** Approximately $12,000 is owed to the Internal Revenue Service, $1,604.47 is owed to the state

## CONCLUSIONS OF LAW

The Debtor seeks to have the involuntary petition dismissed on the grounds that MBC's default judgment claim is subject to a "bona fide dispute." The first issue to be determined is whether MBC lacks standing pursuant to 11 U.S.C. § 303 to file for involuntary relief.

Bankruptcy Code § 303(b)(1) and (2) provide that:

> (b) An involuntary case against a person is commenced by the filing with the bankruptcy court of a petition under chapter 7 or 11 of this title—

> (1) by three or more entities each of which is either a holder of a claim against such person that is not contingent as to liability or the subject of a bona fide dispute ... if such claims aggregate at least $10,000 more than the value of any lien on property of the debtor securing such claims held by the holders of such claims.

> (2) If there are fewer than 12 such holders ... by one or more of such holders that hold in the aggregate at least $10,000 of such claims.

The Debtor has less than twelve creditors. A single creditor is afforded the opportunity to file for involuntary relief pursuant to § 303(b)(2). In determining whether a creditor's claims is subject to a "bona fide dispute" within the meaning of § 303(b)(1) and (2), courts have adopted an objective standard. *In re Lough*, 57 B.R. 993 (Bankr.E.D.Mich.1986); *Subway Equipment Leasing Corp. v. Sims (In re Sims)*, 994 F.2d 210, 220–21 (5th Cir.1993), *cert. denied*, 510 U.S. 1049, 114 S.Ct. 702, 126 L.Ed.2d 669 (1994).

[3] The Court must, when applying this test, ascertain whether there is an objective basis for either a legal or a factual dispute as to the validity of the debt. *Matter of Busick*, 831 F.2d 745, 749 (7th Cir.1987). The outcome of a dispute need not be resolved, only its presence or absence and the Court need engage only in a limited analysis of the claims at issue. *In re Ramm Industries, Inc.*, 83 B.R. 815, 822 (Bankr.M.D.Fla.1988).

of Florida, and $5,900 is owed to American Express Tax and Business Services, Inc.

 The general rule is that an unappealed, unstayed final judgment is not subject to a "bona fide dispute." *In re Raymark Indus., Inc.*, 99 B.R. 298, 300 (Bankr. E.D.Pa.1989); *In re Caucus Distributors, Inc.*, 83 B.R. 921, 928–29 (Bankr.E.D.Va. 1988); *In re Drexler*, 56 B.R. 960 (Bankr. S.D.N.Y.1986).

 Once a creditor has established that its claim is not subject to a bona fide dispute, "the burden shifts to the Debtor to present evidence of a bona fide dispute." *Bartmann v. Maverick Tube Corp.*, 853 F.2d 1540, 1544 (10th Cir.1988).

The Debtor asserts that it has a claim that would more than offset anything owed on the default judgment and thus MBC's claim is diminished below the statutory threshold of at least $10,000.00 required to file an involuntary petition pursuant to § 303(b)(2).

 Generally, "the debtor's assertion of a counterclaim, even if of substance, does not render the petitioner's claim the subject of a bona fide dispute." *In re Drexler*, 56 B.R. 960, 969 (Bankr.S.D.N.Y.1986); *In re J.B. Lovell Corp.*, 88 B.R. 459, 462 (Bankr. N.D.Ga.1988). Counterclaims may work a diminution of the claim, but they do not dispute the merits of the claim itself. *In re Atwood*, 124 B.R. 402, 409 (S.D.Ga.1991).

The former Fifth Circuit has recognized that counterclaims have a limited utility in the bankruptcy scheme and counterclaims may be asserted to reduce either the dollar amount of claims, or the number of creditors below the statutory minimum for involuntary relief. *Georgia Jewelers, Inc. v. Bulova Watch Co.*, 302 F.2d 362, 367 (5th Cir.1962); *see also Harris v. Capehart–Farnsworth Corp.*, 225 F.2d 268, 270 (8th Cir.1955) (permitting the debtor to establish set-offs and counterclaims to challenge the standing of a petitioning creditor's claim); Fed.R.Bankr.P. 1011(d). Thus, counterclaims serve, if established, to work a diminution or set off of the claim of the petitioning creditor under an analysis of 11 U.S.C. § 303(b)(2).

 The Debtor paid MBC $62,778.10 related to the Orlando and Altamonte franchises even though it did not acquire franchise rights to these locations. MBC has acknowledged withholding the franchise fees and security deposits paid by Debtor for the Orlando and Altamonte franchises. MBC has not return these fees deposited by the Debtor in the amount of $62,778.10. The Debtor established it is entitled to offset the indebtedness owed to it against the default judgment claim that is the basis of its involuntary petition. A bona fide dispute exists as to the Florida default judgment and the validity of MBC qualifying to file for involuntary relief.

The right of setoff may be asserted in a bankruptcy case even though at the time the petition is filed one of the debts involved is absolutely owing but not presently due, or where a definite liability has accrued, but is as yet unliquidated. It is not necessary that the debt sought to be set off be due when the case is commenced. 4 Collier on Bankruptcy ¶ 553.10(2), pp. 553–58, 553–59. (1996).

The amount paid to MBC for its franchise fees and security deposits exceeds the amount MBC obtained in the default judgment that underlies this involuntary petition. The unliquidated nature of this debt does not defeat the Debtor's right of setoff. Based on the determination that the Debtor's offset is permissible, MBC is an ineligible petitioner pursuant to 11 U.S.C. § 303(b)(2), and thus its petition seeking the Court to enter an order to relief for the Debtor under Chapter 7 of the Bankruptcy Code is due to be dismissed.

The second issue to be determined is whether MBC lacked good faith in filing its involuntary petition allowing the Debtor to dismiss the involuntary petition for cause.

 Bankruptcy law historically have provided creditors with the opportunity to initiate involuntary proceedings against the Debtor. The central policy behind involuntary petitions was to protect the threatened depletion of assets or to prevent the unequal treatment of similarly situation creditors. Whenever this situation is implicated, bankruptcy policy dictates that a creditor be able to compel liquidation or reorganization of the Debtor's estate through an involuntary petition. 1 Norton Bankr.L. & Prac.2d § 21:10 (1997).

To effectuate proper implementation of this federal bankruptcy policy, it is the province of the Court to ascertain a creditor's objective in filing for relief and determine whether the petition was filed in good faith. *See e.g. Basin Elec. Power Coop. v. Midwest Processing Co.*, 47 B.R. 903 (D.N.D.1984) *aff'd*, 769 F.2d 483 (8th Cir.1985).

Section 303(b) of the Bankruptcy Code does not expressly refer to good faith filings. Involuntary filings must be made in good faith and consequences flow if they are not. Dismissal is one possible consequence. 2 Collier on Bankruptcy ¶ 303.06, pp. 303–38 (1997).

There is a presumption of good faith on the part of a petitioning creditor, and the objecting party has the burden of proving bad faith. *In re CLE Corp.*, 59 B.R. 579, 583 (Bankr.N.D.Ga.1986).

The reasons that make involuntary bankruptcy justifiable are absent in this case. The Debtor was not giving preferred treatment to certain creditors or making fraudulent transfers. *See e.g. In re Better Care, Ltd.*, 97 B.R. 405, 410 (Bankr.N.D.Ill. 1989). Likewise, the Debtor has not dissipated its assets allowing the creditor to seek to replace the Debtor's management with a Trustee. Rather, MBC has attempted to exercise bankruptcy laws to adversely affect the state court litigation against the Debtor. One of the reasons given for this petition was an expressed intent to defeat the Debtor's right to be heard in state court. The state court litigation was filed by the Debtor after it unsuccessfully tried to negotiate a resolution with MBC regarding its dealings pursuant to its franchise agreement. Faced with a potential monetary judgment against it, MBC has tactically decided to take on the offensive by filing an involuntary against the Debtor.

Using the bankruptcy process as a means to promote MBC's individual interest is not consistent with the Bankruptcy Code as it will allow MBC to use bankruptcy laws as a sword rather than as a shield. *Shell Oil Co. v. Waldron (In re Waldron)*, 785 F.2d 936, 940 (11th Cir.1986).

The fundamental requirement that bankruptcy petitions be filed in good faith will be undermined by allowing MBC to proceed with its petition. Unscrupulous creditors should not be allowed to change the outcome of an existing lawsuit by filing for refuge in the bankruptcy courts. The parties have chosen the New Jersey proceedings to litigate their dispute. MBC has answered the Debtor's complaint and is extensively engaged in the course of discovery into the merits of the Debtor's claims.

An inquiry is appropriate to determine the legitimate purpose of the parties who have sought to invoke the jurisdiction of bankruptcy and it is within the Court's discretion to take appropriate steps to prevent the abuse of the bankruptcy process pursuant to 11 U.S.C. § 105(a). There is no legitimate purpose for this involuntary petition. MBC's motivation in filing for involuntary relief is inconsistent with the policy behind involuntary bankruptcies. MBC thus lacked good faith due to its improper purpose in filing its involuntary petition even if it had standing to file under § 303(b)(2).

The Debtor's Motion to Dismiss the involuntary petition is due to be granted on two basis. The judgment claim obtained by MBC is subject to a "bona fide dispute" and MBC filed for involuntary relief with the intent to frustrate the Debtor's New Jersey proceedings, thereby lacking good faith. Accordingly, the petition filed by MBC on August 12, 1997, seeking the Court to enter an order for involuntary relief pursuant to § 303 is due to be dismissed.