**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

IN RE: GEORGES MARCIANO,
*Debtor.*

GEORGES MARCIANO,
*Appellant*,

v.

STEVEN CHAPNICK; JOSEPH FAHS;
ELIZABETH TAGLE,
*Appellees*,

and

DAVID K. GOTTLIEB, Chapter 11
Trustee,
*Intervenor.*

No. 11-60070

BAP No.
11-1008

OPINION

Appeal from the Ninth Circuit
Bankruptcy Appellate Panel
Kirscher, Markell, and Dunn, Bankruptcy Judges, Presiding

Argued and Submitted
November 7, 2012—Pasadena, California

Filed February 27, 2013

Before:  Susan P. Graber, Sandra S. Ikuta,
and Andrew D. Hurwitz, Circuit Judges.

Opinion by Judge Hurwitz;
Dissent by Judge Ikuta

## SUMMARY[*]

### Bankruptcy

Affirming the bankruptcy court's summary judgment, the panel held that an involuntary bankruptcy petition met the requirements of 11 U.S.C. § 303(b)(1) even though the judgments obtained by the petitioning creditors were on appeal when the petition was filed.

Following the "*Drexler*" rule, and declining to follow the approach of the Fourth Circuit, the panel held that an unstayed state judgment on appeal is per se a "claim against [the debtor] that is not contingent as to liability or the subject of a bona fide dispute as to liability or amount," and thus meets the requirements of § 303(b)(1) for the claims of petitioning creditors.

The panel also held that service of the summons and complaint was proper, and the bankruptcy court did not err in entering an order precluding discovery as to the petitioning creditors' alleged bad faith in filing the involuntary petition.

---

[*] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

Dissenting, Judge Ikuta wrote that the majority's adoption of a per se rule for claims arising from certain state court judgments created a circuit split, was contrary to *In re Vortex Fishing Sys., Inc.*, 277 F.3d 1057 (9th Cir. 2001), and erased a protection given to debtors under the Bankruptcy Code.

## COUNSEL

Daniel J. McCarthy, Hill, Farrer & Burrill, LLP, Los Angeles, California; Richard C. Macias and Sanford L. Frey, Creim Macias Koenig & Frey LLP, Los Angeles, California, for Appellant/Chapter 11 Debtor.

Bradley E. Brook, Law Offices of Bradley E. Brook, Los Angeles, California, for Appellees/ Petitioning Creditors.

Jeremy V. Richards, Pachulski Stang Ziehl & Jones LLP, Los Angeles, California, for Chapter 11 Trustee.

## OPINION

HURWITZ, Circuit Judge:

This case presents a question of first impression in this court: Under § 303(b)(1) of the Bankruptcy Code, 11 U.S.C. § 303(b)(1), is an unstayed state judgment on appeal *per se* a "claim against [the debtor] that is not contingent as to liability or the subject of a bona fide dispute as to liability or amount?" Our answer to that question is "yes."

# I.

In 2007, Georges Marciano sued five of his former employees in California Superior Court, alleging theft. Three employees—Joseph Fahs, Steven Chapnick, and Elizabeth Tagle (the "Petitioning Creditors")—cross-complained, alleging defamation and intentional infliction of emotional distress. As a sanction for a pattern of discovery abuses, the state trial court struck Marciano's answers to the cross-claims. After a jury trial on damages, the trial court entered judgments in favor of Fahs, Chapnick, and Tagle for $55 million, $35 million, and $15.3 million, respectively.[1]

Marciano appealed the three judgments to the California Court of Appeal but did not post a bond to stay them during appeal. *See* Cal. Civ. Proc. Code § 917.1(1) ("Unless an undertaking is given, the perfecting of an appeal shall not stay enforcement of the judgment or order in the trial court if the judgment or order is for . . . [m]oney or the payment of money . . ."). The Superior Court and Court of Appeal denied Marciano's stay requests, and the California Supreme Court denied his petition for review.

In addition to the Petitioning Creditors, five others had obtained judgments against Marciano totaling approximately $190 million. While the appeals of the Petitioning Creditors' judgments were pending, various judgment creditors began collection efforts. The Petitioning Creditors then filed an involuntary petition, pursuant to § 303(b)(1) of the

---

[1] The jury originally returned verdicts in the amount of $74,044,000 in favor of each Petitioning Creditor. The trial court reduced the jury awards so that the damages did not exceed the amount demanded in each cross-complaint.

Bankruptcy Code, against Marciano in the United States Bankruptcy Court for the Central District of California.

Marciano moved to dismiss the petition for defective service of process. The bankruptcy court denied the motion. The bankruptcy court subsequently rejected Marciano's efforts to conduct discovery as to whether the involuntary petition had been filed in bad faith and granted the Petitioning Creditors' motion for summary judgment. *In re Marciano*, 446 B.R. 407 (Bankr. C.D. Cal. 2010). The United States Bankruptcy Appellate Panel for the Ninth Circuit ("BAP") affirmed. *Marciano v. Fahs* (*In re Marciano*), 459 B.R. 27 (B.A.P. 9th Cir. 2011).

This appeal followed. We have jurisdiction pursuant to 28 U.S.C. § 1291 and 28 U.S.C. § 158.[2]

## II.

Marciano's first argument on appeal—that the bankruptcy court erred in denying his motion to dismiss for defective service of process—need not detain us long. Bankruptcy Rule 7004(b) permits service of the summons and complaint by first class mail "to the individual's dwelling house or usual place of abode or to the place where the individual regularly conducts a business or profession." Fed. R. Bankr. P. 7004(b)(1). The petition and summons here were served at

---

[2] Upon Marciano's motion, we granted a stay pending appeal, subject to appropriate conditions to be established by the BAP. The BAP then issued an order establishing such conditions and giving Marciano thirty days to satisfy them. Rather than comply, Marciano filed a motion to vacate or modify the conditions in this court. We denied that motion and dissolved the stay.

a Beverly Hills address. At the time of service, Marciano had listed that address with the California Secretary of State as the place where he could be served with process as the agent for four of his businesses. Marciano's designation of the Beverly Hills address for service of process was a certification that he either lived at or regularly conducted business there, *see* Cal. Corp. Code § 1502(b), and the bankruptcy court therefore did not err in denying the motion to dismiss.

## III.

Marciano's second argument, however, requires more extended discussion. He contends that, because the judgments obtained by the Petitioning Creditors were on appeal when the involuntary petition was filed, the bankruptcy court should have dismissed the petition as not meeting the requirements of § 303(b)(1) of the Bankruptcy Code.

Under § 303(b)(1), an involuntary bankruptcy may be commenced against a debtor by the filing of a petition

> by three or more entities, each of which is either a holder of a claim against such person that is not contingent as to liability or the subject of a bona fide dispute as to liability or amount, or an indenture trustee representing such a holder, if such noncontingent, undisputed claims aggregate at least $14,425 more than the value of any lien on property of the debtor securing such claims held by the holders of such claims[.]

11 U.S.C. § 303(b)(1) (footnote omitted). The bankruptcy court and the BAP successively held that an unstayed non-default state judgment is a claim not in bona fide dispute as to liability or amount under § 303(b)(1). *In re Marciano*, 446 B.R. at 422; *In re Marciano*, 459 B.R. at 54–55. Because the issue turns on interpretation of the Bankruptcy Code, we review those holdings de novo. *Temecula v. LPM Corp.* (*In re LPM Corp.*), 300 F.3d 1134, 1136 (9th Cir. 2002).

Perhaps because the Bankruptcy Code does not define "bona fide dispute," interpretation of § 303(b)(1) has divided courts. The majority view—the "*Drexler*" rule—is that unstayed non-default state judgments on appeal are not subject to bona fide dispute for purposes of § 303(b)(1).[3] *In re Drexler*, 56 B.R. 960, 967 (Bankr. S.D.N.Y. 1986); *accord In re AMC Investors, LLC*, 406 B.R. 478, 487 (Bankr. D. Del. 2009); *Norris v. Johnson* (*In re Norris*), 1997 WL 256808, at *5, 114 F.3d 1182 (5th Cir. 1997); *In re Euro-Am. Lodging Corp.*, 357 B.R. 700, 712 (Bankr. S.D.N.Y. 2007) (per curiam) (unpublished); *In re Amanat*, 321 B.R. 30, 37 (Bankr. S.D.N.Y. 2005); *In re Raymark Indus., Inc.*, 99 B.R. 298, 300 (Bankr. E.D. Pa. 1989); *In re Caucus Distribs., Inc.*, 83 B.R. 921, 929 (Bankr. E.D. Va. 1988). Cases following this approach reason that it would be "contrary to the basic principles respecting, and would effect a radical alteration of, the long-standing enforceability of unstayed final judgments

---

[3] When a claim arises from a default judgment, the bankruptcy court may determine whether the court entering the judgment lacked personal jurisdiction. *See In re AMC Investors, LLC*, 406 B.R. 478, 487 (Bankr. D. Del. 2009); *see also Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 706 (1982) ("A defendant is always free to ignore the judicial proceedings, risk a default judgment, and then challenge that judgment on jurisdictional grounds in a collateral proceeding.").

to hold that the pendency of the debtor's appeal created a 'bona fide dispute.'" *In re AMC Investors*, 406 B.R. at 484 (quoting *In re Drexler*, 56 B.R. at 967).

The minority approach—the "*Byrd*" rule—holds that, although "it will be the unusual case in which a bona fide dispute exists in the face of claims reduced to state court judgments[,] [s]uch judgments do not guarantee the lack of a bona fide dispute." *Platinum Fin. Servs. Corp. v. Byrd* (*In re Byrd*), 357 F.3d 433, 438 (4th Cir. 2004). Under the *Byrd* rule, the petitioning creditor makes a "prima facie" case of compliance with § 303(b)(1) by presenting an unstayed state judgment, but the debtor is given the opportunity nonetheless to demonstrate the existence of a bona fide dispute as to liability or the amount of the debt. *Id*. at 439; *accord In re Henry S. Miller Commercial, LLC*, 418 B.R. 912, 920–21 (Bankr. N.D. Tex. 2009); *In re Graber*, 319 B.R. 374, 377–78 (Bankr. E.D. Pa. 2004); *In re Prisuta*, 121 B.R. 474, 476 (Bankr. W.D. Pa. 1990); *In re Tucker*, No. 5:09-bk-914, 2010 WL 4823917, at *3 (Bankr. N.D. W.Va. Nov. 22, 2010); *In re Briggs*, Nos. 07-34534, 07-34533, 2008 WL 190463, at *2 (Bankr. N.D. Tex. Jan. 18, 2008).

With appropriate deference to our sister circuit, we conclude that the *Drexler* rule is correct as a matter of both statutory interpretation and federalism.

Section 303(b)(1) requires that a petitioning creditor hold a "claim" against the debtor. Under § 101(5)(A) of the Bankruptcy Code, a "claim" is a "right to payment, whether or not such right is reduced to judgment." 11 U.S.C. § 101(5)(A). Thus, a right to payment includes a "judgment." Accordingly, the "claims" of the three Petitioning Creditors to which the "not in bona fide dispute" screen of § 303(b)(1)

applies are the three unstayed California judgments, not the underlying tort claims of defamation or slander. Under California law, these judgments, in the absence of a stay pending appeal, were plainly not contingent as to liability or amount. Rather, the Petitioning Creditors were entitled to immediate payment of those claims in the amounts set by the superior court judgments. *See* Cal. Civ. Proc. Code § 917.1(a)(1). The Petitioning Creditors thus had fully vested property interests in these claims under California law. See *Butner v. United States*, 440 U.S. 48, 55 (1979) (noting that property interests in bankruptcy proceedings are typically defined by state law).

Although conceding that the Petitioning Creditors were free under California law to collect the amounts owed under the judgments at the time the involuntary petition was filed, Marciano nonetheless claims that the bankruptcy court should have evaluated the merits of the pending appeals before determining that the claims were not in bona fide dispute. His argument relies heavily on *Liberty Tool & Manufacturing v. Vortex Fishing Systems, Inc.* (*In re Vortex Fishing Systems, Inc.*), which posed the relevant inquiry under § 303(b)(1) as "whether there is an objective basis for either a factual or legal dispute as to the validity of the debt." 277 F.3d 1057, 1064 (9th Cir. 2001) (internal quotation marks omitted).

The argument is not persuasive. *Vortex* dealt with contract claims not yet reduced to judgment. *Id.* at 1062–63. Under those circumstances, § 303(b)(1) compelled an inquiry by the bankruptcy court as to the validity of the alleged debt in order to prevent the debtor from being forced into involuntary bankruptcy on the basis of a naked allegation of debt by a Petitioning Creditor. *Id.*; *see also In re Byrd*, 357 F.3d at 438 (noting that a central purpose of § 303(b)(1)

is "to prevent creditors from using involuntary bankruptcy to coerce a debtor to satisfy a judgment even when substantial questions may remain concerning the liability of the debtor" (internal quotation marks omitted)). But where, as here, the amount and validity of the claims of the Petitioning Creditors have been established by non-default state judgments and the debtor's immediate liability cannot be disputed under governing state law, there can be no such concerns. Indeed, it is difficult to imagine a more "objective" measure of the validity of a claim than an unstayed judgment entered by a court of competent jurisdiction.

In these circumstances, allowing the bankruptcy court to inquire further as to the validity of the Petitioning Creditor's claims, rather than establishing an objective basis for evaluating § 303(b)(1) claims, instead "turns the court into an odds maker on appellate decision-making." *In re AMC Investors*, 406 B.R. at 485. Such a process, which almost always will turn on a judgment by an Article I federal court as to whether a state trial court erred as a matter of state law in entering the judgment or whether a state court erred in denying a stay pending appeal, cannot be more "objective" than simply honoring the unstayed state judgment. If required to evaluate the merits of a debtor's appeal at the time an involuntary petition is filed (often before appellate briefs are filed), reasonable jurists might well reach differing decisions. But there can be no dispute as to whether a state court judgment on appeal has been stayed.

Moreover, the *Byrd* approach runs counter to principles of federalism. Section 1738 of Title 28 of the United States Code requires a federal court to accord the judicial proceedings of a state court "the same full faith and credit in every court within the United States . . . as they have by law

or usage in the courts of such State." 28 U.S.C. § 1738. Such "full faith and credit" would be of little consequence if a federal court treated a non-default unstayed state judgment differently than it would be treated in its state of origin. If the creditor is entitled to have the judgment treated as valid in the state courts, we see no reason why a bankruptcy court should be allowed to question the judgment.

Congress could, of course, have modified the historic recognition of state sovereignty in § 1738 (which has its roots in the First Congress, *see* 1 Stat. 122 (May 26, 1790)), in adopting the Bankruptcy Code, but we discern no such intent in the current statute or its history. Section 63a of the Bankruptcy Act of 1898, the predecessor to § 303(b), required that a creditor filing an involuntary bankruptcy petition have a claim based upon a "fixed liability, as evidenced by a judgment or an instrument in writing, absolutely owing at the time of the filing of the petition against [the debtor]." In interpreting § 63a, we held almost a century ago:

> Where a judgment has not been paid, or has not been superseded on appeal by a bond . . . surely the judgment debtor cannot avoid the effect of levy and execution. And here the effect of the appeal . . . did not itself operate to stay execution or to stay proceedings or to make the judgment any the less an obligation absolutely owing by the bankrupt. . . . If the debt was then a fixed liability in the form of a judgment the right to file the claim existed.

*Moore v. Douglas* (*In re Berlin Dye Works & Laundry Co.*), 230 F. 399, 402 (9th Cir. 1916); *see also Grafton v. Lloyd*,

86 F.2d 205 (9th Cir. 1936) (per curiam) (rejecting a debtor's contention that unstayed state judgments could not support an involuntary petition). Section 63a was replaced by § 303 in the Bankruptcy Reform Act of 1978, Pub. L. No. 95-598, 92 Stat. 2549. The Reform Act was designed to lighten the burden for creditors seeking to file an involuntary bankruptcy petition. Comm'n on the Bankruptcy Laws of the United States, Report of the Comm'n on the Bankruptcy Laws of the United States, H.R. Doc. No. 137, 93d Cong., 1st Sess. 1 (1973). Section 303(b) therefore should not be read as *sub silentio lowering* the status of unstayed state court judgments. *See also* Lawrence Ponoroff, *Involuntary Bankruptcy and the Bona Fides of a Bona Fide Dispute*, 65 Ind. L.J. 315, 322 (1990) (noting that the Reform Act "appreciably lightened the burden for creditors seeking to establish entitlement to involuntary relief").

Moreover, the *Drexler* approach well serves a central purpose of the involuntary bankruptcy laws—to "protect the threatened depletion of assets or to prevent the unequal treatment of similarly situat[ed] creditors." *In re Manhattan Indus., Inc.*, 224 B.R. 195, 200 (Bankr. M.D. Fla. 1997). When a bankruptcy court prevents holders of unstayed state judgments from invoking involuntary bankruptcy, the ready alternative is precisely what the Code seeks to avoid—creditors "racing to the courthouse to dismember the debtor." *Danning v. Bozek* (*In re Bullion Reserve of N. Am.*), 836 F.2d 1214, 1217 (9th Cir. 1988).

We thus hold that an unstayed non-default state judgment is not subject to bona fide dispute for purposes of § 303(b)(1). The bankruptcy court did not err in finding that the

Petitioning Creditors held claims meeting the requirements of § 303(b)(1).[4]

## IV.

Finally, Marciano contends that the bankruptcy court erred in entering an order precluding discovery as to the Petitioning Creditors' alleged bad faith in filing the involuntary petition because (1) two Petitioning Creditors were the most aggressive of his creditors in their collection efforts, (2) the third Petitioning Creditor joined in the involuntary petition only after her settlement overtures were rebuffed, and (3) the Petitioning Creditors opposed Marciano's various stay applications. We review the entry of a protective order for abuse of discretion. *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1130 (9th Cir. 2003).

The Bankruptcy Code does not expressly provide for dismissal of an otherwise proper involuntary petition because of the subjective "bad faith" of the filers. But even assuming the theoretical availability of such a defense, we cannot perceive the benefit of discovery on the issue here, where each of the Petitioning Creditors held a substantial judgment against Marciano. The bankruptcy court did not abuse its discretion in concluding that further discovery would have been unlikely to produce any evidence material to the

---

[4] Shortly before oral argument, the California Court of Appeal affirmed the three judgments held by the Petitioning Creditors, but reduced each to $10 million. *Gottlieb v. Fahs*, No. BC375824, 2012 WL 5310004, at *1 (Cal. Ct. App. Oct. 29, 2012) (unreported). No timely petition for review was filed, and the Court of Appeal's judgment is now final. Because the issue of whether the involuntary petition was appropriate is measured at the time of filing, *In re Drexler*, 56 B.R. at 968, this affirmance does not inform our analysis today.

pending summary judgment motions. *See* Fed. R. Civ. P. 26(b)(2)(C)(iii) (requiring a protective order if the "burden or expense of the proposed discovery outweighs its likely benefit"); Fed. R. Bankr. P. 7026 (providing that Fed. R. Civ. P. 26 applies in adversarial bankruptcy proceedings).

**AFFIRMED.**

IKUTA, Circuit Judge, dissenting:

The initiation of an involuntary bankruptcy case can have substantial consequences for a debtor, including "loss of credit standing, inability to transfer assets and carry on business affairs, and public embarrassment." *In re Reid*, 773 F.2d 945, 946 (7th Cir. 1985). To avoid potential abuses, the Bankruptcy Code precludes creditors from forcing debtors into bankruptcy based on claims that are subject to a bona fide dispute, 11 U.S.C. § 303(b)(1), and we have required bankruptcy courts to scrutinize such claims on a case-by-case basis. *See In re Vortex Fishing Sys., Inc. (Vortex)*, 277 F.3d 1057, 1064 (9th Cir. 2001). But the majority departs from this precedent, adopting an unsupported per se rule that claims arising from certain state court judgments are *never* subject to a bona fide dispute. This new rule creates a circuit split, *see In re Byrd*, 357 F.3d 433, 438 (4th Cir. 2004) (rejecting this per se rule), is contrary to our case law, *see Vortex*, 277 F.3d at 1064, and erases a protection given to debtors under the Code. I respectfully dissent.

# I

## A

In this case, a state court awarded some $95.3 million in damages to three of Marciano's former employees for defamation and intentional infliction of emotional distress. *See Fahs v. Marciano*, No. BC 375824 (Cal. Super. Ct. July 29, 2009); *Chapnick v. Marciano*, No. BC 375824 (Cal. Super. Ct. July 29, 2009); *Tagle v. Marciano*, No. BC 375824 (Cal. Super. Ct. July 30, 2009). The jury making this award did not consider Marciano's response to the employees' complaints, because the state court struck Marciano's answer and entered his default as a discovery sanction. Marciano appealed the judgments, but did not obtain a stay of the judgments pending appeal. *See In re Marciano (Marciano I)*, 446 B.R. 407, 416–17 (Bankr. C.D. Cal. 2010). While the appeal was pending, the three employees filed an involuntary petition against Marciano based on these judgments. *Id*. at 417.

Marciano argues, as he did before the bankruptcy court and bankruptcy appellate panel, that at the time the involuntary petition was filed, the claims arising from these judgments were "the subject of a bona fide dispute as to liability or amount" for purposes of § 303(b). Both bankruptcy courts rejected Marciano's argument without undertaking the case-specific inquiry required by our precedent. *See Marciano I*, 446 B.R. at 424; *In re Marciano (Marciano II)*, 459 B.R. 27, 54–55 (9th Cir. B.A.P. 2011); *but see Marciano II*, 459 B.R. at 59–62 (Markell, J., dissenting) (arguing that the per se rule is inconsistent with § 303(b)'s text and Ninth Circuit precedent). Instead of correcting this error, the majority today signs off on the bankruptcy courts'

shortcut, and decides as a matter of law that there cannot be "an objective basis for either a factual or a legal dispute as to the validity," *Vortex*, 277 F.3d at 1064, of a claim based on an unstayed state court judgment, *see* Maj. op. at 8. This is contrary to the text of the statute and our case law.

**B**

Section 303(b) of the Code specifies the circumstances in which creditors can place a debtor into involuntary bankruptcy.[1] Because "[t]he filing of an [i]nvoluntary [p]etition should not be lightly undertaken," *Higgins v. Vortex Fishing Sys., Inc. (Higgins)*, 379 F.3d 701, 707 (9th Cir. 2004) (quoting *In re Advance Press & Litho, Inc.*, 46 B.R. 700, 702 (Bankr. D. Colo.1984)), Congress created safeguards to "discourage inappropriate and frivolous filings." *Id.* Among other things, at least three creditors must join forces to commence an involuntary case against a debtor

---

[1] Subsection (b), in relevant part, states:

> (b) An involuntary case against a person is commenced by the filing with the bankruptcy court of a petition under chapter 7 or 11 of this title—
>
> > (1) by three or more entities, *each of which is either a holder of a claim against such person that is not* contingent as to liability or *the subject of a bona fide dispute as to liability or amount*, or an indenture trustee representing such a holder, if such noncontingent, undisputed claims aggregate at least $14,425 more than the value of any lien on property of the debtor securing such claims held by the holders of such claims

11 U.S.C. § 303(b)(1) (emphasis added).

like Marciano, and each of them must hold a claim "that is not contingent as to liability or the subject of a bona fide dispute as to liability or amount." § 303(b)(1).

In *Vortex*, we adopted "the objective test used by the other circuits" for determining whether there is a "bona fide dispute" under § 303(b). 277 F.3d at 1062. The test requires courts to "determine whether there is an objective basis for either a factual or a legal dispute as to the validity of the debt." *Id.* at 1064 (quoting *In re Busick*, 831 F.2d 745, 750 (7th Cir. 1987)). This is a factual inquiry. *Id.* "A bankruptcy court is not asked to evaluate the potential outcome of a dispute, but merely to determine whether there are facts that give rise to a legitimate disagreement over whether money is owed, or, in certain cases, how much." *Id.* By requiring a factual, case-by-case inquiry into the nature of each claim, *Vortex* precludes the majority's per se rule.

The Fourth Circuit reached the same conclusion in *Byrd*. In considering "whether an unstayed state court judgment that is pending appeal can constitute a 'bona fide dispute' for purposes of the Bankruptcy Code," 357 F.3d at 435–36, *Byrd* first adopted the same "objective test" for determining the existence of a bona fide dispute as we adopted in *Vortex*. *See id.* at 437. The Fourth Circuit then declined to adopt any per se rule that claims based on unstayed state court judgments can never be in "bona fide dispute." *Id.* at 438. *Byrd*'s reasoning was straightforward: even after judgment is rendered in a state case, "substantial questions may remain about a debtor's liability, notwithstanding judgments in a creditor's favor." *Id.* (quoting *In re Prisuta*, 121 B.R. 474, 476 (Bankr. W.D. Pa. 1990)). Although "it will be the unusual case in which a bona fide dispute exists in the face of claims reduced to state court judgments," state court

judgments hardly "guarantee the lack of a bona fide dispute," particularly in the absence of an appellate ruling or "in the face of contrary rulings by other" state trial courts.  *Id.*

*Byrd*'s reasoning is clearly applicable here.  Given the circumstances of the $95 million judgments against Marciano, the bankruptcy court was at least bound to consider whether there were legitimate questions regarding Marciano's liability and the amount of damages, as well as whether the trial court's conclusion was contrary to the rulings of other state courts.  *See, e.g.*, *id*.  As later events showed, Marciano's contention that the employees' claims were subject to a bona fide dispute as to amount was well justified: the state appellate court ultimately reduced the amount of each award to $10 million.  *See Gottlieb v. Fahs*, No. BC218087, 2012 WL 5310004, at *1 (Cal. Ct. App. Oct. 29, 2012).  Under these circumstances, the bankruptcy court erred in failing to apply the *Vortex* test to determine whether there was an objective basis for a dispute as to the validity of the creditors' claims.

## II

Instead of adhering to our precedent and following the Fourth Circuit's well-reasoned lead, the majority adopts a shortcut solution that skips over the safeguard of scrutinizing claims carefully before placing a debtor in involuntary bankruptcy.  None of the majority's reasons for enunciating this new per se rule withstands scrutiny.

**A**

First, the majority errs in concluding that an immediately enforceable judgment is equivalent to an undisputed claim. Maj. op. at 8–9. The majority's reasoning seems to be that once a claim is reduced to judgment, the judgment is a "claim," and because an unstayed state court judgment is immediately enforceable, there can be no objective basis for dispute as to the "claim's" liability or amount. *Id*. Both parts of this analysis are wrong. First, the Code's definition of "claim" does not include "judgment." Section 101(5) of Title 11 defines "claim" to mean a "right to payment, *whether or not* such right is reduced to judgment." *Id*. (emphasis added). As this language makes clear, a claim is a "right to payment," not a "judgment," and it is irrelevant whether the right to payment has been reduced to judgment. Reading § 101(5) and § 303(b) together, therefore, the bankruptcy court must determine whether the *right to payment* is subject to a bona fide dispute, not whether any resulting judgment is subject to such a dispute.

Once this error is corrected, it is clear that the immediate enforceability of an unstayed judgment has no bearing on whether there is "an objective basis for either a factual or a legal dispute as to the validity of the debt." *Vortex*, 277 F.3d at 1064. If a "judgment" is not a "claim," then it is irrelevant whether the enforceability of a judgment is beyond dispute. *See, e.g.*, *In re Henry S. Miller Commercial, LLC*, 418 B.R. 912, 920 (Bankr. N.D. Tex. 2009) ("[A]ll of the courts that conclude that an unstayed judgment (even if on appeal) is not a claim that is the subject of a bona fide dispute seem to conflate the concept of 'enforceable judgment' with the concept of there being a claim that is not subject to a bona fide dispute."). Under California law, a creditor's claim may

be subject to a bona fide dispute, and the debtor may ultimately prevail on appeal, even if the creditor has enforced an unstayed judgment issued by the trial court. If the debtor does ultimately prevail on appeal, a court can simply unwind the creditor's collection efforts. *See Stockton Theatres, Inc. v. Palermo*, 264 P.2d 74, 78 (Cal. Dist. Ct. App. 1953); 9 Witkin, Cal. Proc. 5th, §§ 900–03 (2008). When a judgment is reversed, both the appellate court and the trial court will attempt "to place the parties in as favorable a position as they could have been in had the judgment[ ] not been enforced pending appeal." *Gunderson v. Wall*, 126 Cal. Rptr. 3d 880, 883 (Cal. Ct. App. 2011) (internal quotation marks omitted); Cal. Code Civ. P. § 908 ("When the judgment or order is reversed or modified, the reviewing court may direct that the parties be returned so far as possible to the positions they occupied before the enforcement of or execution on the judgment or order.").

Because an unstayed state judgment is not a "claim," and because the immediate enforceability of a judgment is irrelevant to the § 303(b) inquiry, neither argument justifies the majority's per se rule.

## B

The majority likewise errs in ignoring the objective test we enunciated in *Vortex*. Although the majority claims that *Vortex* is distinguishable on its facts, and should be read as applying only to "contract claims not yet reduced to judgment," Maj. op. at 9, this purported distinction is plainly wrong. We first noted in *Vortex* that "[t]his Circuit has not defined a 'bona fide dispute' . . . nor is it defined by statute."

*Vortex*, 277 F.3d at 1064.  We then considered the objective test enunciated by the Seventh Circuit, and noted that "all other circuit courts that have considered the question have adopted some variation" of this objective test.  *Id.*  After considering and rejecting the use of a subjective test, we stated that "[w]e join our sister circuits in adopting the objective test for dispute regarding liability or amount."  *Id.*  Clearly, our articulation of the objective test in *Vortex* (expressly joining the other circuits that had adopted the test) was not dependent on the facts of that case, but rather provided the circuit's construction of "subject to a bona fide dispute" in § 303(b).

Alternatively, the majority asserts that its per se rule is consistent with *Vortex*, because a per se rule is even more "objective" than the *Vortex* test.  Maj. op. at 10.  This makes little sense.  The *Vortex* test does not require courts to be "objective" in some unspecified manner, but rather to "determine whether there is an *objective basis* for either a factual or a legal dispute as to the validity of the debt."  *Vortex*, 277 F.3d at 1064 (quoting *In re Busick*, 831 F.2d 745, 750 (7th Cir. 1987)) (emphasis added).  In other words, *Vortex* requires a particular objective approach, and one which is inconsistent with the majority's approach.

## C

The majority also argues that "the *Byrd* approach runs counter to principles of federalism," Maj. op. at 10, by failing to give state court judgments "full faith and credit" in

accordance with the Full Faith and Credit Act, *see* 28 U.S.C. § 1738.**[2]**  This argument is unavailing.

The Full Faith and Credit Act requires federal courts to give state court judgments the same "full faith and credit" they would receive in courts of that state. *See Matsushita Elec. Indus. Co. v. Epstein*, 516 U.S. 367, 373 (1996). Generally, this means that federal courts must "apply the pertinent state's collateral estoppel principles." *In re Cantrell*, 329 F.3d 1119, 1123 (9th Cir. 2003); *see also Grogan v. Garner*, 498 U.S. 279, 284 n.11 (1991).  In this case, for instance, § 1738 requires us to give the California judgment against Marciano the same preclusive effect it would have in state court.  Thus, under California issue preclusion rules, we are barred from reconsidering Marciano's liability, *see In re Diamond*, 285 F.3d 822, 828–29 (9th Cir. 2002), or from adjusting the amount awarded to the state court plaintiffs, *see In re Sasson*,

---

**[2]** 28 U.S.C. § 1738 states, in relevant part:

> The records and judicial proceedings of any court of any such State, Territory or Possession, or copies thereof, shall be proved or admitted in other courts within the United States and its Territories and Possessions by the attestation of the clerk and seal of the court annexed, if a seal exists, together with a certificate of a judge of the court that the said attestation is in proper form.

> Such Acts, records and judicial proceedings or copies thereof, so authenticated, shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken.

424 F.3d 864, 872 (9th Cir. 2005), since these issues were already fully adjudicated in state court.

But giving effect to the language of § 303(b) does not require federal courts to reassess liability or the amount of a state court judgment.  As *Byrd* explained in rejecting a similar argument, the question whether the parties could relitigate liability or amount is not related to the question whether the debtor's appeals "themselves constituted genuine disputes." *Byrd*, 357 F.3d at 440.  A bankruptcy court does not relitigate the debtor's liability "by inquiring into the genuineness" of the debtor's appeals for purposes of § 303(b), because in doing so it does not "actually resolv[e] any disputed question of fact or law."  *Id*. at 440–41.  We have recognized in other settings that the question whether a determination is *subject to* a genuine dispute is separate from determining the merits of that dispute.  *See, e.g.*, 28 U.S.C. § 1292(b)(1) (2006) (allowing district court judges to certify interlocutory appeals of orders involving "a controlling question of law as to which there is substantial ground for difference of opinion"); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (certificates of appealability may issue if "the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right.").

In short, determining whether a claim based on a state court judgment is subject to a bona fide dispute does not require us to relitigate any issue decided in a state court proceeding.  Therefore, the natural reading of § 303(b)(1), under which federal bankruptcy courts must determine whether such a bona fide dispute exists, is entirely consistent with the Full Faith and Credit Act.

**D**

The majority's legislative history argument likewise fails. The majority asserts that legislative history shows that the Bankruptcy Reform Act "was designed to lighten the burden for creditors seeking to file an involuntary bankruptcy petition." Thus, according to the majority, § 303(b)(1) "should not be read as *sub silentio lowering* the status of unstayed state court judgments." Maj. op. at 12.

Yet, as is so often the case, different portions of the same legislative history point in the other direction, and suggest that the "bona fide dispute" language was added to protect debtors from threats of involuntary bankruptcy by creditors holding claims of questionable validity. *See* 130 Cong. Rec. S.7,618 (daily ed. June 19, 1984) (statement of Sen. Baucus) ("I believe this amendment, although a simple one, is necessary to protect the rights of debtors and to prevent misuse of the bankruptcy system as a tool of coercion."); 148 Cong. Rec. S.11,728 (daily ed. Nov. 20, 2002) (statement of Sen. Baucus) ("[A]n involuntary bankruptcy action should not be employed by litigants seeking to gain more leverage than they would have if they disputed contract performance in the proper judicial forum."); *see also* Lawrence Ponoroff, *Involuntary Bankruptcy and the Bona Fides of a Bona Fide Dispute*, 65 Ind. L. J. 315, 335 (1990) (noting that these "remarks evince a revived concern about the potentially ruinous consequences which the initiation of an involuntary proceeding can have on a debtor's business."). At best, the evidence we have about Congress's intentions and purposes with respect to the "bona fide dispute" language is limited and ambiguous. The majority thus falls into the dangerous trap of "allowing ambiguous legislative history to muddy

clear statutory language." *Milner v. Dep't of the Navy*, 131 S. Ct. 1259, 1266 (2011).

**E**

Finally, the majority turns to policy, and asserts that its per se "approach well serves a central purpose of the involuntary bankruptcy laws—to 'protect the threatened depletion of assets or to prevent the unequal treatment of similarly situated creditors.'" Maj. op. at 12 (quoting *In re Manhattan Indus., Inc.*, 224 B.R. 195, 200 (Bankr. M.D. Fla. 1997)). But the Code does not instruct courts to pursue this goal at all costs. "The Bankruptcy Code does not require that a debtor's assets be dissipated while frivolous or hopeless appeals wend their way through the courts, but neither does it permit debt collection by every creditor that has reduced its claims to judgment." *Byrd*, 357 F.3d at 441. To the contrary, the "bona fide dispute" language in § 303(b)(1) functions as a safeguard against abuses of involuntary bankruptcy. After today's opinion, that safeguard may now be circumvented.

**III**

Under *Vortex*, the majority should have examined whether there was an objective basis for Marciano's contention. By ignoring this case-specific inquiry in favor of a per se rule, the majority has erroneously elevated judicial efficiency above Congress's clear commands, ignored our own precedent, and created a circuit split. This result is especially worrisome in the context of bankruptcy, where uniformity is sufficiently important that our Constitution authorizes Congress to establish "uniform laws on the subject of bankruptcies throughout the United States." U.S. Const. Art. I, § 8, cl. 4.

We could have avoided these problems merely by following the language of the statute as interpreted by our precedent. Because we failed to do so, I respectfully dissent.